## HAUCK MANUFACTURING COMPANY, Plaintiff,

v.

## ASTEC INDUSTRIES, INC., Astec, Inc., Bruce Irwin, Frank T.Y. Sun, and Sun Valley Technology, Inc., Defendants.

### No. 1:03–CV–166.

United States District Court,
E.D. Tennessee,
Southern Division.

Oct. 14, 2004.

---

See also 2004 WL 3396122.

Amy Carpenter Holmes, John R. Ferguson, Thomas R. Lotterman, Swidler, Berline, Shereff, Friedman, Llp, Washington, DC, Russell W. Gray, Thomas O. Helton, Baker, Donelson, Bearman, Caldwell & Berkowitz, Chattanooga, TN, for Plaintiff.

Bret S. Alexander, Christina L. Mack, John G. Jackson, Richard W. Bethea, Jr., Chambliss, Bahner & Stophel, Pc, Russell W. Gray, Baker, Donelson, Bearman, Caldwell & Berkowitz, Robert J Batson, Jr., Michelle C. McFadyen, William A. Lockett, Goins, Carpenter & James, Chattanooga, TN, for Defendants.

### MEMORANDUM

COLLIER, District Judge.

Before the Court is a motion to dismiss or, in the alternative, motion for judgment on the pleadings filed by Defendants Astec Industries, Inc., and Astec, Inc. (collectively, "Astec") (Court File No. 101). Astec filed a brief in support of its motion (Court File No. 102), Plaintiff Hauck Manufacturing Company ("Plaintiff") filed a brief in opposition (Court File No. 110), and Astec filed a reply (Court File No. 114). Additionally, Astec filed a motion to supplement its briefing (Court File No. 235). For the following reasons, the Court will **GRANT** Astec's motion to supplement its briefing and **GRANT IN PART** and **DENY IN PART** Astec's motion to dismiss or for judgment on the pleadings.

### I. STANDARD OF REVIEW

Courts apply the same analysis to motions for judgment on the pleadings under Federal Rule of Procedure 12(c) as they apply to motions to dismiss under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir.2001). Under either rubric, the Court must construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir.2001). The Court may not grant the motion based upon a disbelief of a complaint's factual allegations. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995) (noting courts should neither weigh evidence nor evaluate the credibility of witnesses); *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir.1990). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller*, 50 F.3d at 377. The complaint, however, must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery

under some viable legal theory." *Id.* (citations omitted).

## II. *RELEVANT FACTS*

The facts underlying this action have been previously set forth in great detail and the Court has made certain preliminary findings of fact in the memorandum accompanying the Court's Order granting Plaintiff's request for a preliminary injunction (Court File No. 53). However, given the nature of the present motion, the Court must limit its consideration to the facts as alleged in Plaintiff's amended complaint (Court File No. 91). Plaintiff is engaged in the business of designing, building, and marketing burners used to dry aggregate in the asphalt-mixing process. Plaintiff has a number of product lines designed for asphalt plant applications, including the EcoStar series of "sealed-in" burners. Astec is engaged in the business of designing, manufacturing, and marketing temporary and/or permanent hot-mix asphalt plants and, prior to the present litigation, had purchased burners from Plaintiff since 1972 for use in its products. Plaintiff alleges over the years Astec undertook several unsuccessful attempts to enter the burner business as a competitor to Plaintiff.

Defendant Bruce Irwin ("Irwin") went to work with Plaintiff in 1988 as an engineering manager, where he participated in the development of the EcoStar series of burners. Upon beginning his employment with Plaintiff, Irwin signed a "confidentiality agreement" which provided he would not "divulge or appropriate to his own use or to the use of others any secret or confidential information or knowledge obtained by him or disclosed to him during his employment at [Plaintiff]" (Court File No. 91, ¶ 28). Plaintiff obtained a patent on the EcoStar in 1993 through the work of Irwin and others. In 1994, Irwin signed a "conflict of interest agreement" which provided it was "in conflict with [Plain-

tiff's] interests for an employee to perform any services, either as an officer, director, employee, or consultant for another person or entity that is a competitor of, or is doing or seeking to do business with, [Plaintiff]" (*id.* at ¶ 31).

In 1998, Irwin became responsible for servicing Plaintiff's largest customer, Astec (*id.* at 32). At this time Plaintiff also undertook the development of the EcoStar II burner, which would employ a new high pressure nozzle to achieve a more efficient air flow, a decrease in pressure drop, and a more stable flame (*id.* at ¶¶ 33–35). In connection with the development of the EcoStar II, Plaintiff contacted Defendants Frank T.Y. Sun and Sun Valley Technology, Inc. (collectively, "Sun") regarding the design of a new burner nozzle (*id.* at ¶ 36). On October 26, 1999, Plaintiff and Sun entered into a confidentiality agreement pursuant to which Sun promised to keep confidential for three years all confidential information it received from Plaintiff (*id.* at ¶ 37). Over the course of several months, Plaintiff provided Sun with confidential environmental test data and confidential results from various tests of Sun's evolving nozzle (*id.* at ¶ 38). Ultimately, Plaintiff decided not to use the nozzle developed by Sun in the EcoStar II (*id.* at ¶ 39).

On January 16, 2001, Plaintiff alleges Irwin met with a group of Astec executives and out of this meeting emerged a conspiracy pursuant to which Irwin would use his position with Plaintiff to appropriate Plaintiff's confidential and proprietary information for the purpose of assisting Astec in the development of its own combustion equipment (*id.* at ¶¶ 47–51). Plaintiff alleges over the next five months Irwin systematically stole and/or disclosed "over 1,000 computer files, drawings, and other propriety information ... vital to the research and development, technology, and

pricing" of Plaintiff's burners (*id.* at ¶¶ 51, 56–58). Astec formally offered Irwin a position on April 5, 2001, which he accepted on April 22, 2001 (*id.* ¶ 52). Plaintiff claims to have known nothing of any of these activities or agreements until June 22, 2001, when Irwin gave Plaintiff notice of his intention to leave for employment with Astec (*id.* at ¶ 53).

Irwin officially began his employment with Astec on July 16, 2001, and by March 2002 Astec had begun exhibiting the WhisperJet burner (*id.* at ¶¶ 60, 64). Plaintiff contends the WhisperJet incorporates significant design elements of the EcoStar II which had been disclosed in Plaintiff's pending patent application to which Irwin had been privy (*id.* at ¶ 68). Plaintiff further contends Astec purchased nozzles for the WhisperJet from Sun and, in the process, Sun disclosed confidential information regarding Plaintiff's EcoStar II in violation of the confidentiality agreement between Sun and Plaintiff (*id.* at ¶¶ 42–46). On March 17, 2003, Astec returned to Plaintiff electronic and paper copies of more than 1,000 documents which Plaintiff alleges contained confidential drawings and "other trade secret and proprietary information" (*id.* at ¶ 74). Plaintiff alleges the actions of Astec, Irwin, and Sun have cost it at least four customers, resulted in a loss of consumer goodwill, and given Astec an unfair advantage in the burner market (*id.* at ¶¶ 75–81).

Plaintiff brought the present action on May 9, 2003, and now asserts causes of action against Astec for (1) misappropriation of trade secrets in violation of the Uniform Trade Secrets Act (Count I); (2) tortious interference with Plaintiffs' contracts with Irwin and Sun (Count IV); (3) unlawful procurement of breach of Irwin and Sun's contracts with Plaintiff in violation of Tenn.Code Ann. § 47–50–109 (Count V); (4) civil conspiracy with Irwin (Count VII); (5) conversion (Count VIII); and (6) unjust enrichment (Count IX) (*see* Court File No. 91, ¶¶ 82–95, 108–135, 144–162). After a hearing, the Court entered a preliminary injunction restraining and enjoining Astec and Irwin from selling, marketing, manufacturing, or using the WhisperJet burner until a trial on the merits in this matter (Court File No. 69). Astec then filed the present motion seeking dismissal or judgment on the pleadings on all Plaintiff's claims against it with the exception of Count I's alleged misappropriation of trade secrets (Court File No. 101).

## III. DISCUSSION

Astec argues Plaintiff's claims for tortious interference with contract (Count IV), unlawful procurement of breach of contract (Count V), civil conspiracy (Count VII), conversion (Count VIII), and unjust enrichment (Count IX) are preempted by Tennessee's version of the Uniform Trade Secrets Act ("UTSA") because they are based on alleged misappropriation of trade secrets (Court File No. 102, pp. 6–13). Plaintiff disagrees, contending each of its challenged causes of action allege "a readily cognizable tort that involves factual allegations and legal elements that go beyond Astec's 'mere' misappropriation of trade secrets" (Court File No. 110, p. 5). As an initial matter, the Court will **GRANT** Astec's motion to supplement its brief in support of its motion (Court File No. 235) with evidence and argument relating to the report and deposition testimony of Plaintiff's damages expert, David Kennedy. The Court does so in the interest of creating a complete record and because the evidence and arguments which Astec seeks to add have ultimately not affected the Court's ruling one way or the other.

Tennessee's version of the UTSA, adopted in 2000, establishes a statutory scheme governing the definition of, protection from, and penalties for misappropriation of trade secrets. Tenn.Code Ann.

§§ 47–25–1701 *et seq.* The UTSA provides a statutory cause of action for misappropriation of trade secrets and authorizes injunctive and monetary relief where such misappropriation is proven. The UTSA, as adopted by Tennessee, additionally provides for the displacement of "conflicting tort, restitutionary, and other law . . . providing civil remedies for misappropriation of a trade secret," but does not affect "other civil remedies that are not based upon misappropriation of a trade secret." Tenn.Code Ann. § 47–25–1708(a), (b)(2).[1]

The parties offer differing interpretations of this provision, evidencing general disagreement among courts and commentators regarding the circumstances under which state law claims "conflict" with the UTSA and when a claim is "based upon" misappropriation of a trade secret. Plaintiff contends the UTSA's preemptive force is limited to statutory and common law causes of action for misappropriation of trade secrets and claims brought under non-misappropriation causes of action which, as plead, simply restate allegations of trade secret misappropriation (Court File No. 110, pp. 3–5). Thus, Plaintiff argues, its claims are not preempted because (1) allegations of trade secret misappropriation do not alone comprise the underlying wrong, and (2) the claims include additional elements not necessary to establishing the misappropriation claim (Court File No. 110, pp. 4–5). Astec, on the other hand, contends the UTSA "clearly preempts the applicability of [non-misappropriation] causes of action to disputes *involving* allegations of trade secret misappropriation" (Court File No. 114, p. 2) (emphasis added). Therefore, Astec posits, because "each of Plaintiff's causes of action is necessarily based upon the underlying allegations of trade secret misappropriation," they are all displaced by the UTSA (*id.* at 6).

The parties' disagreement as to the scope of Tenn.Code Ann. § 47–25–1708 is reflective of the marked ambiguity and inconsistency characterizing the language used in the various state and federal court opinions interpreting and applying USTA preemption. No courts, state or federal, have as yet undertaken to analyze or apply Tennessee's particular preemption provision, but Tenn.Code Ann. § 47–25–1709 provides "[t]his part shall be applied and construed to effectuate its general purpose to make consistent the law with respect to the subject of this act among states enacting it." Therefore, the Court may seek guidance in case law interpreting and applying the law of the 42 other states which have adopted the UTSA. *See Auto Channel, Inc. v. Speedvision Network, LLC,* 144 F.Supp.2d 784, 788 (W.D.Ky.2001). The UTSA has been uniformly interpreted to preempt previously existing misappropriation of trade secret actions, whether statutory or common law. *See, e.g., Accuimage Diagnostics Corp. v. Terarecon, Inc.,* 260 F.Supp.2d 941, 952–54 (N.D.Cal.2003).

---

1. Tenn.Code Ann. § 47–25–1708 provides in full:

**Effect on other law.**—(a) Except as provided in subsection (b), this part displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.

(b) This part does not affect:

(1) Contractual remedies, whether or not based upon misappropriation of a trade secret; provided, a contractual duty to maintain secrecy or limit use of a trade secret shall not be deemed to be void or unenforceable solely for lack of durational or geographical limitation on the duty;

(2) Other civil remedies that are not based upon misappropriation of a trade secret; or

(3) Criminal remedies, whether or not based upon misappropriation of a trade secret.

(c) In no event shall a written contract be required to maintain an action or recover damages for misappropriation of a trade secret proven under this part.

Courts are also in general agreement the UTSA's preemptive force reaches at least some additional causes of action, but have adopted differing approaches and language in interpreting and applying the UTSA's preemption provision to causes denominated as something other than a claim explicitly for "misappropriation of trade secrets."

Despite its apparently limiting language displacing only "conflicting tort, restitutionary, and other law . . . providing civil remedies for *misappropriation of a trade secret*," the UTSA's preemption provision has generally been interpreted to abolish all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status (*e.g.*, idea misappropriation, information piracy, theft of commercial information, *etc.*). *See Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir.1992) ("[UTSA] has abolished all common law theories of misuse of [secret] information. Unless defendants misappropriated a (statutory) trade secret, they did no legal wrong.") (citation omitted); *Auto Channel*, 144 F.Supp.2d at 788–90 ("[UTSA] provides the only avenue for claims based on idea misappropriation in Kentucky."); *Learning Curve Toys, L.P. v. Playwood Toys, Inc.*, 1999 WL 529572, *3 (N.D.Ill. July 20, 1999) (purpose of UTSA was "to codify all the various common law remedies for theft of ideas"); *see also* UTSA § 7, comment ("[UTSA preemption] applies to a duty to protect competitively significant secret information that is imposed by law."); Robert Unikel, *Bridging the "Trade Secret" Gap: Protecting "Confidential Information" Not Ris-*

*ing to the Level of Trade Secrets*, 29 Loy. U. Chi. L.J. 841, 886–89 (1998) (describing as most appropriate view that UTSA defines the "outer limit" of available protection for valuable, commercial information). Thus, the UTSA would appear to occupy the field and create a single class of commercially valuable intangible property which the law protects as such. *See Bio-Core, Inc. v. Khosrowshahi*, 96 F.Supp.2d 1221, 1238 (D.Kan.2000) ("Even if confidential information can be something less than a trade secret, it must at least be a trade secret to give its owner a property right in it."), *rev'd on other grounds*, 80 Fed.Appx. 619, 2003 WL 22481768 (10th Cir.2003) (unpublished opinion); Unikel, *Bridging the "Trade Secret" Gap*, 29 Loy. U. Chi. L.J. 841 (advocating creation of second class of "protectable, proprietary information" to fill theoretical gap between "trade secrets" and "general skill and knowledge," thus acknowledging present lack of such a class of information).

Nevertheless, some courts have permitted plaintiffs to protect non-trade secret information through the use of generally applicable tort claims which are not, by definition, limited to the alleged pilfering of intangible property, but could be made out based on such facts (*e.g.*, unfair competition, conversion, unjust enrichment, breach of confidence, breach of fiduciary duty, fraud, misrepresentation, tortious interference with contract, *etc.*). Some courts have interpreted the UTSA broadly and found preemption of all non-contract state law claims which rely, in some form or fashion, on facts constituting a misappropriation of trade secrets. *See, e.g., Thomas & Betts Corp. v. Panduit Corp.*, 108 F.Supp.2d 968, 971 (N.D.Ill.2000).[2]

---

**2.** *See also Lucini Italia*, 231 F.Supp.2d at 768 ("If the common law claims rely on the trade secret facts, they are preempted and will be dismissed."); *AutoMed Tech., Inc. v. Eller*, 160 F.Supp.2d 915, 922 (N.D.Ill.2001) (claim

not preempted only if it "states an independent claim, completely distinct from any trade secrets"); *Auto Channel*, 144 F.Supp.2d at 789 ("Court must . . . determine whether the claim seeks a remedy for the misappropria-

Other courts have interpreted the UTSA's preemption provision more narrowly and concluded preemption is only appropriate where claims are nothing more than a verbatim restatement of the same facts which would " 'plainly and exclusively spell out *only* trade secret misappropriation.' " *See, e.g., Powell Prods., Inc. v. Marks,* 948 F.Supp. 1469, 1474 (D.Colo.1996) (quoting Roger M. Milgrim, *Milgrim on Trade Secrets,* § 1.01[4], at 1–68.14) (emphasis added).[3] In short, courts unanimously agree that in order for non-UTSA claims to survive they must rely on something more than allegations of misappropriation of trade secrets, but they appear to disagree as to what exactly that "something more" must be. *See On–Line Techs. v. Perkin Elmer Corp.,* 141 F.Supp.2d 246, 261 (D.Conn.2001) (in order to avoid preemption of unjust enrichment claim plaintiff needed to allege "ill-gotten gains other than those resulting from the misuse of confidential information"); *Powell Prods.,* 948 F.Supp. at 1474 (no preemption where claims do not depend upon information in question qualifying as trade secret or include additional elements not necessary for a UTSA misappropriation claim); *Coulter Corp. v. Leinert,* 869 F.Supp. 732, 734 (E.D.Mo.1994) (claim must include allegations of some underlying wrong other than trade secret misappropriation); *Micro Display Sys., Inc. v. Axtel, Inc.,* 699 F.Supp. 202, 204–05 (D.Minn.1988) (claims not preempted if "causes of action have

'more' to their factual allegations than the mere use or misappropriation of trade secrets"); *Frantz v. Johnson,* 116 Nev. 455, 999 P.2d 351, 358 n. 3 (2000) (holding UTSA preempts where the "factual circumstances underlying the claims ... are completely dependent on the facts concerning misappropriation of trade secrets").

Plaintiff argues, at least in part, certain of its non-UTSA claims against Astec are not preempted because they do not depend on the information at issue qualifying as a "trade secret" (Court File No. 110, pp. 6–8, 9–10, 12). While some courts have employed language seemingly indicating as much, *see Powell Prods.,* 948 F.Supp. at 1474 (finding no preemption of claim for interference with business relationships because claim "[did] not depend upon the information in question qualifying as trade secrets"), a plaintiff surely cannot use general tort causes of action to revive claims which would otherwise not be cognizable in light of the UTSA (*i.e.,* claims alleging theft of non-trade secret information). It is a legal *non sequitor* to suggest general tort causes may be employed to protect legal rights which otherwise do not exist. *See Khosrowshahi,* 96 F.Supp.2d at 1238 ("Even if confidential information can be something less than a trade secret, it must at least be a trade secret to give its owner a property right in it."); *Powell Prods.,* 948 F.Supp. at 1475 ("If the design of the

tion of trade secrets."); *Smithfield Ham & Prods. Co. v. Portion Pac, Inc.,* 905 F.Supp. 346, 348–49 (E.D.Va.1995) ("plaintiff must be able to show that the distinct theories of relief sought are supported by facts unrelated to the misappropriation of the trade secret"); *Hutchison v. KFC Corp.,* 809 F.Supp. 68, 71–72 (D.Nev.1992) (finding preemption where "essence of Plaintiffs' claim relates primarily to Defendant's alleged misappropriation of their trade secret"); *Weins v. Sporleder,* 605 N.W.2d 488, 491–92 (S.D.2000) (claims preempted where facts asserted in support

thereof are "inextricably linked to the trade secret claim").

3. *See also Glasstech, Inc. v. TGL Tempering Sys., Inc.,* 50 F.Supp.2d 722, 730 (N.D.Ohio 1999) (UTSA bars "claims which are based entirely on factual allegations of misappropriation of trade secrets"); *Web Communications Group, Inc. v. Gateway 2000, Inc.,* 889 F.Supp. 316, 321 (N.D.Ill.1995) (claims preempted only "to the extent directed at trade secret misappropriation").

plaintiff's machine is not a trade secret, plaintiff has no property right in its design, and it therefore would have no claim."). Such an action would be nothing more than a general idea misappropriation claim under a different name. Thus, there can be no conversion claim based upon the pilfering of information to which the purported victim has no exclusive legal right. Moreover, such an approach would be wholly inconsistent with the UTSA's goals of promoting uniformity and predictability. Some courts have allowed plaintiffs to maintain alternative theories at least until it can be determined whether the information in question constitutes a trade secret,[4] but other courts have soundly and vigorously rejected this approach as inconsistent with the purpose of the UTSA. *See Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F.Supp.2d 943, 948–49 (W.D.Mich.2003); *Lucini Italia*, 231 F.Supp.2d at 767; *Auto Channel*, 144 F.Supp.2d at 788–89; *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del.2002). A claim cannot be preempted or not preempted based entirely upon whether or not the information at issue qualifies as a trade secret. If the information is a trade secret, the plaintiff's claim is preempted; if not, the plaintiff has no legal interest upon which to base his or her claim. Either way, the claim is not cognizable.

This is not to say the presence of a potential trade secret claim in the facts underlying a case precludes a plaintiff from asserting any other sort of tort claim.

The variations in language employed by courts to articulate the test for UTSA preemption can be misleading when considered in the abstract. According to the statute, claims are not preempted as long as they are "not based upon misappropriation of a trade secret." Tenn.Code Ann. § 47–25–1708(b)(2). There are dangers inherent in reading this language either too narrowly or too broadly. Certainly a claim does not miraculously become "not based upon misappropriation of a trade secret" simply because a plaintiff denotes it by a different label. Similarly, all other counts in a complaint are not displaced simply due to the mere presence of a UTSA trade secret misappropriation claim. However, language can be found in the case law to support either extreme. For example, the standard for preemption cannot be a *Blockburger*-type[5] same elements test as suggested in *Powell Products*. 948 F.Supp. at 1474 (finding no preemption of a civil conspiracy claim because that claim required proof of an agreement, which was not an element of the misappropriation claim). However, neither can the standard be a strict same facts test as indicated by the language used in *Learning Curve*. 1999 WL 529572, at *3 ("[I]f the operative facts are arguably cognizable under the [UTSA], any common law claim that might have been available on those facts in the past now no longer exists ....").

In the end, all of these cases turn on their respective factual circumstances as reflected by the plaintiff's pleadings. In

---

4. *See Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 295 F.Supp.2d 430, 437 (D.Del.2003); *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F.Supp.2d 652, 658–59 (E.D.Va.2002); *Combined Metals of Chicago Ltd. P'ship v. Airtek, Inc.*, 985 F.Supp. 827, 830 (N.D.Ill.1997).

5. Courts employ the same-elements test originally articulated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in determining whether two crimes constitute the same criminal offense such that the Double Jeopardy Clause bars additional punishment or successive prosecution. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. at 182.

fact, in several instances courts have stated the law in divergent manners but proceeded to apply those seemingly contrary standards in similar, if not identical, fashion. There are two primary dangers to be avoided in formulating a rule in this area. First, the law should seek to avoid the confusion, inefficiency, and inconsistency which the UTSA and the various state legislatures to have adopted it initially sought to eliminate in the first place. Pure misappropriation of a trade secret should not expose an individual or entity to differing levels of liability across the 43 states which have adopted the UTSA nor should courts be called upon to analyze the same set of operative facts repeatedly under numerous standards of liability. Second, courts should be wary of the possibility of duplicative recoveries for the same injury. Even though a plaintiff might be able (or even required) to prove additional facts in support of alternative claims, he or she would not be entitled to multiple recoveries if the only measurable damages resulted from the trade secret misappropriation. Even if there are multiple wrongs, there can be only one recovery.

■ In light of these considerations, perhaps a better formulation of the UTSA preemption standard would be a "same proof" standard under which a claim will be preempted when it necessarily rises or falls based on whether the defendant is found to have "misappropriated" a "trade secret" as those two terms are defined in the UTSA. Stated another way, if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it. *See* *Smithfield,* 905 F.Supp. at 350 ("The question is ... whether failure of the misappropriation claim would doom the remaining counts as well."). The UTSA defines "misappropriation" broadly enough to cover a wide range of conduct, including the sort of conduct contemplated by the various claims which are often involved in preemption disputes.[6] If a proven claim, whether in whole or in part, constitutes misappropriation of trade secret, it is that and that alone.

The Court concludes such an approach is consistent with both the language and purpose of the UTSA generally and Tenn. Code Ann. § 47–25–1708 specifically. The UTSA explicitly exempts from preemption only those claims "not *based upon* misappropriation of a trade secret," implying the UTSA's preemptive force reaches more than just claims *of* or *for* misappropriation of a trade secret. Thus, Plaintiff's non-UTSA claims against Astec will be preempted if, as plead, they would succeed or fail dependent on proof Astec acquired, disclosed, or used Plaintiff's trade secrets or otherwise confidential information knowing or having reason to know such information was obtained through "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or limit use, or espionage through electronic or other means." *See* Tenn. Code Ann. § 47–25–1702(1) and (2) (defining "misappropriation" of a trade secret). Having established the applicable rule, the Court will proceed to consider each of Plaintiff's claims challenged by Astec.

---

**6.** Tenn.Code Ann. § 47–25–1702(2) generally defines "misappropriation" as the acquisition, disclosure, or use of a trade secret of another by a person who knows or has reason to know that the trade secret was derived by improper means. "Improper means" is then defined as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or limit use, or espionage through electronic or other means." *Id.* § 47–25–1702(1).

## A. Tortious Interference & Unlawful Procurement

■ Count IV of Plaintiff's amended complaint charges Astec with the common law tort of tortious interference with contract (Court File No. 91, ¶¶ 108–21) while Count V charges Astec with the statutory tort of unlawful procurement of breach of contract (Court File No. 91, ¶¶ 122–135). *See* Tenn.Code Ann. § 47–50–109. Though derived from different sources, the elements of these two claims are identical. In order to recover under either the common law or statutory action, a plaintiff must prove (1) there was a legal contract; (2) the defendant was aware of the contract; (3) the defendant maliciously intended to induce a breach; and (4) the defendant's actions proximately caused a breach and resulting damages. *See Quality Auto Parts Co., Inc. v. Bluff City Buick Co.*, 876 S.W.2d 818, 822 (Tenn.1994); *see also Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 359 (Tenn.Ct.App.1999). Plaintiff's specific allegations with respect to both claims generally contend Astec interfered with Plaintiff's contracts with Irwin and Sun by inducing them to breach their confidentiality and conflict of interest agreements with Plaintiff. Because the two types of contracts at issue involve different promises and duties, the Court will consider each separately.

■ With respect to the confidentiality agreements, Plaintiff generally alleges Astec knew about these agreements and, nevertheless, intentionally sought to induce Irwin and Sun to breach their duties thereunder (Court File No. 91, ¶¶ 113–15, 119, 127–29, 133). Plaintiff specifically alleges Irwin breached his contractual duty not to "divulge or appropriate to his own use or to the use of others any secret or confidential information or knowledge ob-

tained by him or disclosed to him during his employment" with Plaintiff by disclosing precisely such information to Astec (*id.* ¶¶ 109, 116, 123, 130) and Sun breached its contractual duty not to "disclose [Plaintiff's] confidential and proprietary information to any third party" by disclosing "certain information to Astec, including but not limited to, information about [Plaintiff's] nozzle" (*id.* ¶¶ 111, 118, 125, 132). The specific contractual provisions at issue (and, for that matter, the contracts as a whole), the nature and manner of the alleged breach, and the alleged harm to Plaintiff all relate exclusively to the disclosure of secret, confidential, and/or proprietary information to Astec. As such, it would appear Plaintiff's tortious interference and unlawful procurement claims are preempted, at least to the extent they rely on the confidentiality agreements. Plaintiff seeks to avoid preemption on the basis it may prevail on its tortious interference claim even if some or all of the confidential information at issue does not amount to a trade secret (Court File No. 110, pp. 6–8). Plaintiff does allege Irwin stole a mass of information from Astec and almost certainly *all* of that information cannot qualify as trade secrets. However, as stated previously,[7] plaintiffs alleging theft or misuse of their ideas, data, or other commercially valuable information are confined to the single cause of action provided by the UTSA Thus, Plaintiff's tortious interference claim, to the extent it relies upon Irwin and Sun's breach of their confidentiality agreements, is synonymous with "misappropriation" as defined in the UTSA, *see* Tenn.Code Ann. § 47–25–1702(1) (defining "misappropriation" to include "breach or inducement of a breach of a duty to maintain secrecy"), and would be preempted under any interpretation of UTSA preemption. *See Thomas & Betts,*

---

7. *See supra* at 655, 656 – 657.

108 F.Supp.2d at 974 (preempting tortious interference with business relations claim based on very same factual allegations which formed the basis of misappropriation of trade secrets claim).

The conflict of interest agreement between Plaintiff and Irwin, however, is a creature of a different sort. Plaintiff alleges Astec induced Irwin to breach his contractual duty not to "perform any services, either as an officer, director, employee, or consultant for another person or entity that is a competitor of, or is doing or seeking to do business with [Plaintiff]" by "performing services for other persons, including but not limited to Astec, which is a competitor of, and is doing business with [Plaintiff]" (Court File No. 91, ¶¶ 110, 117, 124, 131). On their face, neither the contract at issue nor the nature of the alleged breach have anything to do with trade secrets or confidential information. Plaintiff effectively claims Irwin began working with or for Astec while still employed by Plaintiff (*see id.* at ¶¶ 47–58). While Irwin and/or Astec may have misappropriated Plaintiff's trade secrets during this time, Plaintiff's claims for tortious interference with and/or unlawful procurement of breach of Irwin's conflict of interest agreement do not depend on such an allegation in any way. In fact, proof of such facts would be only marginally relevant to the claim. Accordingly, the UTSA does not preempt Plaintiff's tortious interference and unlawful procurement claims to the extent they are based on Irwin's conflict of interest agreement.

### B. Civil Conspiracy

■ Count VII of the complaint charges Astec and Irwin with civil conspiracy (Court File No. 91, ¶¶ 144–49). The elements of a cause of action for civil conspiracy under Tennessee common law are (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) injury to person or property resulting in attendant damage. *See Menuskin v. Williams*, 145 F.3d 755, 770 (6th Cir.1998); *Braswell v. Carothers*, 863 S.W.2d 722, 727 (Tenn.Ct.App.1993). In addition, civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy. *Morgan v. Brush Wellman, Inc.*, 165 F.Supp.2d 704, 721 (E.D.Tenn. 2001) (citing *Tenn. Publ'g Co. v. Fitzhugh*, 165 Tenn. 1, 52 S.W.2d 157, 158 (1932)).

■ In support of its civil conspiracy claim, Plaintiff alleges Astec and Irwin "conspired, agreed, and planned that Irwin, while still a Hauck employee, would provide confidential information to Astec, in violation of his confidentiality and conflict of interest agreements, the duty of loyalty owed to Hauck, and the Uniform Trade Secrets Act" (Court File No. 91, ¶ 145). Thus, the object of the alleged conspiracy was to steal Plaintiff's trade secrets and other confidential information and the predicate torts were misappropriation of trade secret, breach of Irwin's duty of loyalty, and tortious interference with and unlawful procurement of breach of contract. Although at least one of the alleged predicate torts might not itself be preempted by the UTSA (tortious interference and/or unlawful procurement with respect to the conflict of interest agreement), Plaintiff's allegations clearly indicate the overriding object of the conspiracy was to disseminate Plaintiff's confidential and proprietary information. As such, Plaintiff effectively alleges Astec and Irwin conspired to acquire, disclose, or use Plaintiff's confidential and proprietary information by improper means (*i.e.*, breach or inducement of a breach of a duty to maintain secrecy or limit use). Plaintiff argues its civil conspiracy claim is not preempted because it requires the additional element

of a "common design" and encompasses alleged unlawful conduct involving confidential and proprietary information other than trade secrets (Court File No. 110, pp. 9–11). However, as articulated previously, a *Blockburger* same-elements test is not the appropriate standard for preemption and the UTSA clearly preempts all general tort claims for theft of secret information. As plead, Plaintiff's civil conspiracy claim is clearly based upon alleged misappropriation of trade secrets and is therefore preempted. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 179 F.Supp.2d 885, 893 n. 2 (C.D.Ill.2002) (holding conspiracy claim based upon a misappropriation of trade secrets preempted by UTSA).

## C. Conversion

 Count VIII of the complaint charges Astec and Irwin with conversion (Court File No. 91, ¶¶ 150–56). Under Tennessee common law, a cause of action for conversion requires a plaintiff to prove (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, and (3) in defiance of the true owner's rights. *Kinnard v. Shoney's Inc.*, 100 F.Supp.2d 781, 797 (M.D.Tenn.2000); *Paehler v. Union Planters Nat'l Bank*, 971 S.W.2d 393, 398 (Tenn.Ct.App.1997). In support of its conversion claim, Plaintiff alleges Irwin intentionally took documents belonging to Plaintiff for his and Astec's use and benefit (Court File No. 91, ¶¶ 151–54). Astec argues Plaintiff's conversion claim is "a means of merely re-raising its assertions of trade secret misappropriation" and accordingly should be preempted (Court File No. 102, pp. 8–9). Plaintiff, however, contends its claim should not be preempted because it is premised not on Astec and Irwin's use of the materials alleged to have been stolen, but on their physical taking of those materials (Court File No. 110, p. 11). As a result, Plaintiff claims its requested relief goes beyond

that provided for by the UTSA in that it seeks recovery of the physical items taken from its possession (*id.*). As plead, Plaintiff's conversion claim is not based solely on allegations of theft of trade secrets; rather, Plaintiff alleges Astec and Irwin stole documents, including computer files and drawings, which contained, at least in part, trade secrets.

Courts have taken diverging approaches with respect to preemption of conversion claims. *Compare Thomas & Betts*, 108 F.Supp.2d at 973 (holding conversion claim preempted even though plaintiff had alleged defendants had taken computers, disks, and documents containing confidential information because tangible items at issue had "but an immaterial intrinsic value" and "little value apart from the information contained therein") *with Powell Prods.*, 948 F.Supp. at 1474–75 (holding conversion claim not entirely preempted because plaintiff also sought recovery of physical items stolen). However, in the present case, Plaintiff has made no allegations with respect to damages it incurred from Irwin's copying of its physical property. Although Plaintiff does seek return of the various documents taken by Irwin, the Court sees no reason to believe such an order would not be within the scope of the injunctive relief which the Court could grant upon proof of misappropriation. Therefore, the Court sides with the approach taken in *Thomas & Betts* and finds Plaintiff's conversion claim preempted since the physical property Plaintiff alleges to have been stolen derived its primary, if not entire, value from the trade secrets contained therein. *See also Bliss Clearing*, 270 F.Supp.2d at 950–51 (following *Thomas & Betts*).

## D. Unjust Enrichment

 Count IX of the complaint asserts a claim against all defendants, including Astec, for unjust enrichment

(Court File No. 91, ¶¶ 157–62). In order to establish a claim for unjust enrichment, a plaintiff must show (1) there is no contract between the parties or a contract has become unenforceable or invalid, and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation. *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn.1998). In support of its unjust enrichment claim, Plaintiff alleges Astec "unjustly received proprietary and confidential information belonging to [Plaintiff]" and benefitted therefrom without compensating Plaintiff (Court File No. 91, ¶¶ 158–60). Based on the nature of this allegation, Plaintiff's unjust enrichment claim would appear to be preempted. Plaintiff seeks to avoid preemption by noting its claim is based not just on Defendants' use of Plaintiff's trade secrets, but other proprietary and confidential information (Court File No. 110, p. 12). However, as detailed previously,[8] the Court finds the UTSA creates one class of protected confidential intangible property and provides the exclusive cause of action for theft or misuse thereof. Accordingly, Plaintiff's unjust enrichment claim is preempted.

## IV. *CONCLUSION*

For the reasons previously stated, the Court will **GRANT** Astec's motion to supplement its brief (Court File No. 235); will **GRANT IN PART** Astec's motion to dismiss (Court File No. 101) with respect to Plaintiff's claims for civil conspiracy, conversion, and unjust enrichment; will further **GRANT IN PART** the motion to dismiss with respect to Plaintiff's claims for tortious interference with contract and unlawful procurement of breach of contract to the extent those claims are premised on alleged breaches of the confidentiality agreements between Plaintiff and Irwin and Sun; but will **DENY IN PART**

Astec's motion to dismiss as to Plaintiff's tortious interference with contract and unlawful procurement of breach of contract to the extent those claims are premised on an alleged breach of the conflict of interest agreement between Plaintiff and Irwin.

An Order shall enter.

## *ORDER*

In accordance with the accompanying memorandum, the Court hereby **GRANTS** Defendants Astec Industries, Inc., and Astec, Inc.'s, motion to supplement their brief in support of their motion to dismiss or for judgment on the pleadings (Court File No. 235) and further **GRANTS IN PART** Defendants' motion to dismiss or for judgment on the pleadings (Court File No. 101) with respect to Plaintiff Hauck Manufacturing Company's claims for civil conspiracy (Count VII), conversion (Count VIII), and unjust enrichment (Count IX). The Court additionally **GRANTS IN PART** Defendants' motion to dismiss or for judgment on the pleadings with respect to Plaintiff's claims for tortious interference with contract (Count IV) and unlawful procurement of breach of contract (Count V) to the extent those claims are premised on alleged breaches of the confidentiality agreements between Plaintiff and Irwin and Sun. However, the Court **DENIES IN PART** Defendants' motion to dismiss or for judgment on the pleadings as to Plaintiff's claims for tortious interference with contract and unlawful procurement of breach of contract to the extent those claims are premised on an alleged breach of the conflict of interest agreement between Plaintiff and Irwin.

**SO ORDERED.**

---

8. *See supra* at 655, 656 – 657.