# FOR PUBLICATION



FILED
Aug 10 2012, 8:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JUDY S. OKENFUSS**
**THOMAS E. MIXDORF**
**BRIAN J. PAUL**
**STEPHEN E. REYNOLDS**
Ice Miller, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GARY P. PRICE**
**SARA R. BLEVINS**
**MATTHEW S. TARKINGTON**
Lewis & Kappes, P.C.
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HDNET LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1112-PL-1146 |
| | ) | |
| NORTH AMERICAN BOXING COUNCIL, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Thomas J. Carroll, Judge
Cause No. 49D06-0803-PL-12012

**August 10, 2012**

**OPINION – FOR PUBLICATION**

**DARDEN, Senior Judge**

STATEMENT OF THE CASE

HDNET LLC ("HD") appeals the trial court's grant of partial summary judgment in favor of North American Boxing Council ("NABC").

We reverse and remand.

ISSUES

1.  Whether the trial court erred in determining as a matter of law that the Indiana Uniform Trade Secrets Act ("IUTSA") did not preempt NABC's common law claim for idea misappropriation where the claim did not rise to the level of a statutorily-defined trade secret.

2.  Whether the trial court erred in determining as a matter of law that the IUTSA did not preempt NABC's statutory claim for civil conversion of its idea.

FACTS

HD is a television channel that broadcasts exclusively in high-definition via cable and satellite. Its programming is varied and has included mixed martial arts ("MMA"). NABC is a professional boxing and MMA sanctioning body.

In 2007, HD and NABC exchanged a series of e-mails discussing a broadcast arrangement involving HD's broadcast of MMA events and the future development of weekly broadcasts of a MMA fight series. Included in one of the e-mails was information wherein NABC outlined how NABC and HD could develop a "unique branded fight series for [HD]" that was significantly different from the "single entity" model then in use by the major players in the MMA industry. (App. 19). Further discussions between the parties fleshed out the information outlined in the e-mail. The

2

parties did not enter into a contract; however, NABC considered the information communicated to HD to be a protectable commercial idea.

On March 17, 2008, NABC filed a complaint against HD in which it alleged the following facts:

> On or about August 22, 2007, [Mark Cuban, HD's owner] formed HDNet Fights. HDNet Fights is a Delaware corporation with principal offices in Dallas, Texas and Denver, Colorado. HDNet Fights, upon information and belief, was formed for the purpose of operating a business that sanctions, promotes and broadcasts mixed martial arts using the confidential and proprietary information of NABC.
>
> * * * *
>
> NABC has been deprived of the value of its confidential, proprietary information, despite the promises of HDNet. NABC seeks recovery of all monies derived from HDNet's unlawful usurpation of NABC's information and business opportunity.

(App. 22, 24). Based upon these facts, NABC alleged the following: Count I: Idea Misappropriation; Count II: Unfair Competition; Count III: Breach of Oral Contract; Count IV: Breach of Implied Covenant of Good Faith and Fair Dealing; Count V: Negligence; Count VI: Misappropriation of Trade Secrets; Count VII: Conversion of Trade Secrets; and Count VIII: Promissory Estoppel.

In its May 31, 2011 scheduling order, the trial court acted upon a request by the parties and instructed them to file appropriate motions and supporting memoranda addressing the preemption provision of the IUTSA and its application to NABC's idea misappropriation and conversion claims. On June 10, 2011, NABC filed a motion for

3

partial summary judgment addressing the preemption provision and NABC's claim of Count I: Idea Misappropriation and Count VII: Conversion of Trade Secrets,[1] and HD filed a response. The trial court held a hearing on the matter, and on October 18, 2011, it granted partial summary judgment, finding that NABC's claims were not preempted under the IUTSA.

On November 15, 2011, HD filed a motion to certify the trial court's order for interlocutory appeal, which the trial court granted. On February 3, 2012, we granted HD's motion to accept jurisdiction.

DECISION

Standard of Review

HD contends that the trial court erred in granting partial summary judgment on NABC's claim that the IUTSA does not preempt NABC's common law idea misappropriation and civil conversion counts. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Questions of statutory construction are particularly amenable to resolution by summary judgment, as they are pure questions of law. *Koppin v. Strode*, 761 N.E.2d 455, 460 (Ind. Ct. App. 2002), *trans. denied*. We review questions of law de novo and owe no deference to the trial court's legal conclusions. *Id.*

---

[1] Although NABC characterized Count VII in its complaint as the conversion of "trade secrets," it referred to the count in its motion for summary judgment on preemption simply as "conversion" and contended that it could assert such an independent claim even if it failed to prove a trade secret. (App. 885).

4

Background of the Uniform Trade Secrets Act ("UTSA") and the IUTSA

The UTSA was drafted by the National Conference of Commissioners on Uniform State Laws ("Commissioners") in 1979 and amended in 1985. 14 *Uniform Laws Annotated*, Uniform Trade Secrets Act With 1985 Amendments, 529, 530 (historical notes) (2005). The Commissioners expressed the following rationale for drafting of the UTSA:

> Notwithstanding the commercial importance of state trade secret law to interstate business, this law has not developed satisfactorily. In the first place, its development is uneven . . . Secondly, even in states in which there has been significant litigation, there is undue uncertainty concerning the parameters of trade secret protection, and the appropriate remedies for misappropriation of a trade secret.

*Id*. at 531. The Commissioners intended that the UTSA "be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it." *Id*. § 8 at 656 (brackets omitted). This general purpose has been stated as follows:

> [T]o create a uniform business environment [with] more certain standards for protection of commercially valuable information, and to preserve a single tort action under state law for misappropriation of trade secret as defined in the statute and thus to eliminate other tort causes of action founded on allegations of misappropriation of information. If the UTSA's preemption provision only preempted claims of misappropriation of information that meets the statutory definition of a "trade secret," the provisions purpose would be undermined. In every instance where a plaintiff could not meet the statutory requirements of the Uniform Act, the court would be forced to re-analyze the claim under the various common law theories. Such a result would undermine the uniformity and clarity that motivated the creation and passage of the Uniform Act.

*Firetrace USA, LLC v. Jesclard*, 800 F. Supp.2d 1042, 1048-49 (D. Ariz. 2010), *reconsideration denied* (citations omitted).

In 1982, Indiana adopted the UTSA "substantially as promulgated by the [Commissioners]." *Amoco Prod. Co. v. Laird*, 622 N.E.2d 912, 917 (Ind. 1993). The Prefatory Note to the UTSA declares not only that the act is "a substitution for unitary definitions of trade secret, but that it 'also codifies the results of the better reasoned cases concerning the remedies for trade secret misappropriation.'" *Id*. (quoting 14 *Uniform Laws Annotated*, Uniform Trade Secrets Act With 1985 Amendments, 435 (prefatory note) (1990)). "It is thus apparent that Indiana legislators, adopting the UTSA, sought the uniform application of the UTSA definitions of trade secret consistent with the application of the act in other adopting jurisdictions." *Id.* Therefore, "case law from other UTSA jurisdictions becomes relevant authority for construction of trade secret law in Indiana." *Id*. at 918.

The IUTSA contains two provisions that are central to the case before us. Indiana Code section 24-2-3-1(b) provides that the IUTSA "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject matter of this chapter among states enacting the provisions of this chapter." Indiana Code section 24-2-3-1(c), the preemption provision, provides that the IUTSA "displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except

6

contract law and criminal law."[2]  This preemption provision is stronger than that found in either the 1979 or 1985 versions of the UTSA.  *Infinity Prod., Inc. v. Quandt*, 810 N.E.2d 1028, 1033 (Ind. 2004); *AGS Capital*, 884 N.E.2d at 307.

Rules of Statutory Construction

In statutory construction, our primary goal is to ascertain and give effect to the intent of the legislature.  *U.S. Steel Corp. v. Northern Ind. Pub. Serv. Co.*, 951 N.E.2d 542, 553 (Ind. Ct. App. 2011), *trans. denied*.  The language of the statute itself is the best evidence of legislative intent, and we must give all words their plain and ordinary meaning unless otherwise indicated by the statute.  *Id*.  Furthermore, we presume that the legislature intended statutory language to be applied in a logical manner consistent with the statute's underlying policies and goals.  *Id*.  We must read the statute as a whole and excessive reliance on a strict literal meaning should be avoided.  *Jones v. Farmers Mut. Ins. Co.*, 926 N.E.2d 116, 121 (Ind. Ct. App. 2010).

1.      Idea Misappropriation

NABC contends that the IUTSA is unambiguous, and that if the language of the preemption provision of Indiana Code section 24-2-3-1 is given its plain meaning, then it applies only to actions where a "conflicting law" that "pertains" to the misappropriation

---

[2] *AGS Capital Corp. v. Prod. Action Int'l, LLC*, 884 N.E.2d 294, 308 n.4 (Ind. Ct. App. 2008) and courts across the country have used the term "preemption" as a synonym for "displace."  We follow their lead.

of "trade secrets" is at issue. NABC reasons that the preemption provision applies only to "trade secrets" and that its claim of idea misappropriation does not "pertain" to a "trade secret" as the term is used in the IUTSA. Thus, NABC concludes that its idea misappropriation claim cannot be "conflicting law." NABC claims that any other construction would read more into the statute than the plain language allows. NABC's Br. at 12-13.

As stated above, one essential goal of the UTSA is to make uniform the law of the states adopting it. Indeed, our legislature specifically adopted this goal in Indiana Code section 24-2-3-1(b). NABC's construction of the preemption provision completely disregards the legislature's directive that the IUTSA is to be "applied and construed to effectuate its general purpose to make uniform the law . . . ." Thus, NABC fails to read Indiana Code section 24-2-3-1 as a whole, ignoring subsection (b) to excessively rely on the isolated terms of subsection (c). The result is a narrow reading of the IUTSA that does not comport with the intent of our legislature or the majority of courts that have analyzed the preemption provisions of their uniform trade secret acts.

NABC's construction of IUTSA's preemption provision is reminiscent of that proposed by the plaintiff in *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 123 Hawai'i 314, 235 P.3d 310, 319 (Haw. 2010), wherein BlueEarth argues that

> the plain language of the preemption provision ["HUTSA"] . . . refers only to "trade secrets" as defined by the Act. The preemption provision nowhere refers to "other confidential information." It follows, then, that the statute only anticipates preemption of common law claims involving trade secrets.

8

Since there is no statutory language regarding preemption of other confidential information not rising to the level of trade secrets, there is no reason to think such preemption was intended.[3]

In rejecting BlueEarth's construction of the Hawai'i preemption statute, the Supreme Court of Hawai'i recognized that a minority of courts have adopted the "plain language" construction of USTA-inspired state statutes. However, the *BlueEarth* court joined the majority of jurisdictions in holding that the USTA's preemption provision "abolishes all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status (*e.g.* idea misappropriation, information piracy, theft or commercial information, etc.)." *Id.* at 321 (quoting *Hauck Mfg. v. Astec Indus.*, 375 F. Supp.2d 649, 655 (E.D. Tenn. 2004)).

The rationale for these majority decisions has been explained as follows:

---

[3] (a) Except as provided in subsection (b) of this chapter, this chapter displaces conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret.

(b) This chapter does not affect:

(1) Contractual remedies, whether or not based upon misappropriation of a trade secret;

(2) Other civil remedies that are not based upon misappropriation of a trade secret; or

(3) Criminal remedies, whether or not based upon misappropriation of a trade secret.

HRS § 482B-8 (2008).

States adopting statutory provisions analogous to the UTSA's section 7 intend that at least some prior law relating to the protection of commercial information be displaced. Permitting litigants in UTSA states to assert common-law claims for misappropriation or misuse of confidential data would reduce the UTSA to just another basis for recovery and leave prior law effectively untouched. Further, by expressly exempting "contractual remedies, whether or not based upon misappropriation of a trade secret" and "other civil remedies that are not based upon misappropriation of a trade secret" from its preemptive penumbra, the UTSA makes clear that only those claims addressing or arising out of wrongs distinct from pure information piracy survive passage of the trade secret statute. Indeed, contrary interpretations of the UTSA's "Effect on Other Law" provision . . . effectively negate the UTSA's goal of promoting uniformity in "trade secrets" law. Additionally, these contrary interpretations render the statutory preemption provision effectively meaningless.

*Id.* at 321-22 (quoting Unikel, *Bridging the "Trade Secret" Gap*, 29 Loy. U. Chi. L.J. at 887-88 (footnotes omitted)). The UTSA creates a "two-tiered" approach to protection of commercial knowledge, under which "information is classified only as either a protected 'trade secret' or unprotected 'general skill and knowledge.'" *Id.* at 322 (quoting Unikel at 867-68 (footnote omitted)).

Although such an interpretation of Indiana Code section 24-2-3-1(c) seems harsh, we emphasize that our statute does not preempt claims for misappropriation of information or ideas that are protected by contract. *See BlueEarth*, 235 P.3d at 322. To the extent that a plaintiff is seeking to recover for the defendant's misappropriation of plaintiff's intellectual property, it is seeking to recover for misappropriation of trade secrets. These secrets are protected under the IUTSA, and

a plaintiff who complains of the defendant's use of its information, but who cannot prove that the information is secret, should not be able to rely on

10

one of these [common law] torts (or any other common law variants) to bypass the requirement that it prove secrecy. If trade secret law does not preempt these torts, the point of the secrecy requirement will be lost, and with it the benefits of dissemination of new inventions.

*Id.* (quoting Mark A. Lemley, *The Surprising Virtues of Treating Trade Secrets as IP*

*Rights,* 61 Stanford L.Rev. 311, 345-46 (Nov. 2008). In short,

A claim cannot be preempted or not preempted based entirely upon whether or not the information at issue qualifies as a trade secret. If the information is a trade secret, the plaintiff's claim is preempted: if not, the plaintiff has no legal interest upon which to base his or her claim. Either way, the claim is not cognizable.

*Hauck*, 375 F. Supp.2d at 657.

NABC's interpretation of the IUTSA would encourage piece meal litigation and would thus fail to implement the legislature's intended goal of uniformity. Accordingly, we conclude that the trial court's summary judgment order is erroneous as a matter of law.[4]

---

[4] Although the parties do not address the standard of proof, we note that the standard is important. As one court has stated:

[P]erhaps a better formulation of the UTSA preemption standard would be a "same proof" standard under which a claim will be preempted when it necessarily rises or falls based on whether the defendant is found to have "misappropriated" a "trade secret" as those two terms are defined in the UTSA. Stated another way, if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it.

*Hauck*, 375 F. Supp.2d at 658.

11

2.    Conversion

HD contends that the trial court erred in granting summary judgment on NABC's civil conversion claim. In evaluating HD's contention, it is important to understand NABC's argument. First, NABC claims that its civil conversion claim falls within the preemption provision of the IUTSA, which as stated above, provides that the IUTSA "displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and *criminal law*." I.C. § 24-2-3-1(c). NABC points to *AGS Capital* as particularly instructive. In *AGS Capital*, we examined a civil RICO claim related to the theft of trade secrets and specifically addressed the question of whether that claim was preempted by the IUTSA. 884 N.E.2d at 306. We held that the RICO claim was not preempted by the IUTSA because the civil remedy is derivative of criminal law. *Id*. at 308.

NABC argues that civil conversion is also "derivative" of criminal law because it provides a civil remedy for a crime.

However, our analysis in *AGS Capital* is more nuanced than NABC's reading of the case. In reaching our conclusion in *AGS Capital*, we considered that civil RICO and criminal RICO were part of the same statutory scheme having a significant deterrent purpose. *Id.* at 308. Although the civil and criminal RICO statutes were codified in

12

different locations in the Indiana Code, they were enacted as part of the same public law.[5]

In *AGS Capital,* we emphasized that the civil RICO statute was part of a conscious one-two punch adopted by the legislature to combat "the more sinister forms of corruption and criminal activity." *Id*. We stated:

> [T]he preemption provision of IUTSA should not prohibit RICO from fulfilling its purpose where the form of the corruption involves the systematic acquisition of economically valuable information through the artifice of competitors' employees in order to gain an unlawful economic advantage in the marketplace. RICO is structured to reach and punish these diabolical operations that are a greater threat to society than random theft. In consideration of the purpose and goals of the entire RICO framework, we conclude that the civil remedy portion providing for a private action is derivative of the criminal law. Thus, this type of action is not preempted by IUTSA.

*Id.* We further explained that our ruling would result in a greater disincentive for the "strategic, repetitive theft of trade secrets" because under the civil RICO provision treble damages and attorney fees are mandatory, whereas under the IUTSA they are discretionary. *Id*. at 308-09. It is for these reasons that the civil RICO statute is "derivative," not simply because it provides a civil remedy for a crime.

The same is not true of the Crime Victim's Relief Act ("the Act"), which contains Indiana Code section 34-24-3-1, the statute that defines civil conversion. The Act was

---

[5] The civil RICO statute, Indiana Code section 34-24-2-6 (formerly Indiana Code section 34-4-30.5-5), and the criminal RICO statute, Indiana Code section 35-45-6-2, were both enacted by P.L. 199-1980.

13

not enacted as part of the same statutory scheme as criminal conversion.[6] The Act is not part of a one-two punch—or "two fronts and a field of land mines to deter and ultimately eliminate egregious and schematic criminal activity"—that makes up the unique RICO statutory scheme. *See AGS Capital*, 884 N.E.2d at 308. Rather, the Act provides a civil remedy for a host of crimes, including random theft. Its focus is on providing the victim "relief" for the alleged crime, allowing him or her to recover attorney fees and costs in pursuing the action. *See* I.C. § 34-24-3-1. Thus, it is not "derivative" in the way that we held that the civil RICO statutory scheme is derivative of the criminal RICO scheme.

The upshot is that NABC's civil conversion allegation does not delineate a criminal act; it merely outlines another allegation of civil misappropriation of NABC's ideas. Thus, the conversion action is not saved by the criminal law exception to the IUTSA's preemption provision.

## CONCLUSION

The IUTSA is intended to foster uniformity in the definition of state laws, and a party may not read this design out of the statutory scheme under the guise of "plain language" or any other rule of construction. NABC's "plain language" reading of IUTSA's preemption provision lays waste to both legislative intent of the IUTSA and the overall intent of the UTSA. Accordingly, the trial court erred in granting summary judgment on NABC's idea misappropriation claim.

---

[6] The civil conversion statute is part of the Crime Victim's Relief Act that was enacted by P.L. 26-1977, while the criminal conversion statute, Indiana Code section 35-43-4-3, was enacted by P.L. 148-1976.

NABC's civil conversion claim does not fall within the "criminal law" exception to the IUTSA's preemption provision. Therefore, the trial erred in granting summary judgment on the claim.

Reversed and remanded for further proceedings.

FRIEDLANDER, J., and BROWN, J., concur.