LAW LIBRARY



IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

BLUEEARTH BIOFUELS, LLC, Plaintiff-Appellee,

vs.

HAWAIIAN ELECTRIC COMPANY, INC.; MAUI ELECTRIC COMPANY, LTD.; ALOHA PETROLEUM, LTD.; and KARL E. STAHLKOPF, Individually, Defendants-Appellants.

NO. 30144

CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAI'I
(CIV. NO. 09-00181)

2010 JUL 20 AM 10:27
K. YAMAKADO
CLERK, APPELLATE COURTS
STATE OF HAWAII
FILED

JULY 20, 2010

MOON, C.J., NAKAYAMA, ACOBA, DUFFY, AND RECKTENWALD, JJ.

OPINION OF THE COURT BY DUFFY, J.

The United States District Court for the District of Hawai'i (District Court) certified the following questions of law to the Hawai'i Supreme Court:

> 1. When are "tort, restitutionary, and other law[s] of this state" displaced because they "conflict" with [the Hawai'i Uniform Trade Secrets Act (HUTSA)], Hawaii Revised Statutes ("HRS") § 482B?
>
> 2. When a claim is found to "conflict" with HUTSA, what is the scope of the preemption, or displacement, of that claim under HRS § 482B-8?
>
> 3. May a claim that is found not to "conflict" with HUTSA still be preempted, or displaced, under HRS § 482B-8?
>
> 4. Does HUTSA also preempt, or displace, claims based upon the alleged misuse of "confidential information," which is determined, before or during trial, not to meet the definition of "trade secret" under HRS § 482B-2?

# I. BACKGROUND

## A. Factual Background

This case involves plans to create and construct a biodiesel production facility on Maui. Plaintiff-Appellee BlueEarth Biofuels, LLC (BlueEarth) specializes in the production of biodiesel production facilities. In or around March 2006, BlueEarth began talks with Hawaiian Electric Company, Inc. (HECO) and Maui Electric Company, Ltd. (MECO) to "jointly and exclusively develop a biodiesel production facility to be located on the Island of Maui[(the Project).]"

In furtherance of their discussions regarding the Project, BlueEarth executed a Mutual Non-Circumvention and Non-Disclosure Agreement (NDA) with both HECO and MECO.[1] BlueEarth, HECO, and MECO also signed a confidential memorandum of understanding (Project Agreement), which set forth how the Project would be planned, developed, permitted, funded, constructed, maintained, and operated.

In 2007, BlueEarth, HECO, and MECO began discussions related to potential fuel subcontractors who would manage and run

---

[1] The NDAs established, inter alia, that: 1) confidential information given by one party to another would remain the property of the originating party; 2) confidential information of the originating party would be kept confidential by the receiving party and would not be disclosed or used for any purpose other than evaluating the Project; 3) any contacts revealed by one party to the other would be the exclusive contacts of the disclosing party; 4) the receiving party would not enter into direct negotiations or transactions with contacts revealed by the disclosing party; and 5) neither party would solicit or accept any business from sources made available by one party to the other without the express written permission of the party who made the source available.

logistics for a fuel terminal, which would be used to store raw materials and fuel in connection with the Project. BlueEarth approached Aloha Petroleum, Ltd. (Aloha) as a potential subcontractor. In furtherance of their discussions, BlueEarth and Aloha executed a NDA on January 28, 2008. As with the HECO and MECO NDAs, the Aloha NDA contained a provision that information furnished by one of the parties would be kept confidential by the receiving party and its representatives. On July 14, 2008, BlueEarth and Aloha also executed a Mutual Confidentiality Agreement (Confidentiality Agreement), which provided that neither party shall use or disclose each other's confidential information to third parties or solicit business from each other's clients.

BlueEarth alleges that, contrary to the terms of the previously described Project Agreement, NDAs, and Confidentiality Agreement, HECO[2], MECO and Aloha engaged in undisclosed negotiations with each other concerning the development, investment, and ownership of the Project with the intent to cut BlueEarth out of the Project altogether. Though the Project has yet to be built, BlueEarth claims that it expended in excess of $1.2 million working to develop the Project pursuant to the Project Agreement.

---

[2] HECO was allegedly represented in these negotiations by its Senior Vice President and Chief Technology Officer Karl Stahlkopf (Stahlkopf), who is named as an individual defendant in the action.

B. Procedural Background

In October of 2008, BlueEarth filed suit in the Northern District of Texas. On April 21, 2009, the case was transferred to the District of Hawaiʻi. On May 29, 2009, BlueEarth filed its Second Amended Complaint (SAC), alleging the following causes of action: 1) breach of contract against HECO (HECO NDA); 2) breach of contract against MECO (MECO NDA); 3) breach of contract against HECO and MECO (Project Agreement); 4) quantum meruit/unjust enrichment against HECO and MECO; 5) breach of contract against Aloha (Aloha NDA and Confidentiality Agreement); 6) unfair competition against under Hawaiʻi Revised Statutes (HRS) § 480-2, et seq. against HECO, MECO, Stahlkopf, and Aloha; 7) tortious interference with existing contracts against HECO, MECO, Stahlkopf, and Aloha (all NDAs and the Confidentiality Agreement); 8) tortious interference with existing contract against Aloha (Project Agreement); 9) misappropriation of trade secrets against HECO, MECO, Stahlkopf, and Aloha; 10) conversion against HECO, MECO, Stahlkopf, and Aloha; and 11) breach of fiduciary duty against HECO and MECO.

On June 29, 2009, Aloha moved to dismiss the Sixth through Tenth causes of action. On the same day, HECO, MECO, and Stahlkopf (collectively the HECO defendants) moved to dismiss

BlueEarth's SAC.[3] On September 17, 2009, BlueEarth filed oppositions to both motions. Aloha and the HECO defendants filed their respective reply briefs on September 24, 2009. A hearing was held on the motions to dismiss on October 5, 2009. The District Court issued its Certified Questions on November 2, 2009. This court issued its Order On Certified Question on November 9, 2009, allowing the parties to file briefs regarding the Certified Questions in accordance with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28.

Aloha filed its opening brief on January 27, 2010. The HECO defendants also filed their opening brief on January 27, 2010. BlueEarth filed its answering brief on April 5, 2010. Aloha and the HECO defendants filed their respective reply briefs on April 29, 2010.

## II. STANDARDS OF REVIEW

### A. Certified Question

"The supreme court shall have jurisdiction and powers . . . [t]o answer, in its discretion . . . any question or proposition of law certified to it by a federal district or

---

[3] As observed by the District Court,

> [a]lthough the motion was styled as moving for dismissal of the SAC in its entirety, the arguments set forth in the motion only sought dismissal of [BlueEarth's] Fourth, Sixth, Ninth, Tenth, and Eleventh causes of action, the tort- and restitutionary-based causes of action.

appellate court if the supreme court shall so provide by rule[.]" HRS § 602-5(a)(2) (Supp. 2009).

"When a federal district or appellate court certifies to the Hawaiʻi Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawaiʻi that is determinative of the cause and that there is no clear controlling precedent in the Hawaiʻi judicial decisions, the Hawaiʻi Supreme Court may answer the certified question by written opinion." HRAP 13(a) (2000).

"An issue of law presented by a certified question is reviewed by this court de novo under the right/wrong standard of review." Lee v. HSBC Bank USA, 121 Hawaiʻi 287, 289, 218 P.3d 775, 777 (2009) (citing Francis v. Lee Enter., Inc., 89 Hawaiʻi 234, 236, 971 P.2d 707, 709 (1999)).

B. Statutory Construction

> It is a well-established rule of statutory construction that this court's
>
> > foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And [this court] must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> Aluminum Shake Roofing, Inc. v. Hirayasu, 110 Hawaiʻi 248, 251, 131 P.3d 1230, 1233 (2006) (citation omitted) (format altered).

Kahoʻohanohano v. Dep't of Human Servs., State of Haw.,

117 Hawai'i 262, 288, 178 P.3d 538, 564 (2008) (brackets in original).

## III. DISCUSSION

In answering the Certified Questions, this court is required to determine the preemptive[4] scope of the Hawai'i Uniform Trade Secrets Act (HUTSA) in HRS section 482B-1 et seq., which is an issue of first impression in this jurisdiction. The HUTSA's preemption provision reads as follows:

> **Effect on other law.** (a) Except as provided in subsection (b) this chapter displaces conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret.
>
> (b) This chapter does not affect:
>
> (1) Contractual remedies, whether or not based upon misappropriation of a trade secret;
> (2) Other civil remedies that are not based upon misappropriation of a trade secret; or
> (3) Criminal remedies, whether or not based upon misappropriation of a trade secret.

HRS § 482B-8 (2008).

In order to answer the Certified Questions, it is necessary to first review the background of the Uniform Trade Secrets Act (UTSA) and HUTSA and analyze the decisions of other jurisdictions that have considered the scope of the UTSA's preemptive effect.

---

[4] Courts that have considered this issue use the terms "preempt" and "displace" interchangeably. This opinion uses the terms interchangeably as well.

A. Background of the UTSA and HUTSA

The UTSA was drafted by the National Conference of Commissioners on Uniform State Laws (Commissioners) in 1979 and amended in 1985. UTSA (amended 1985) 14 Uniform Laws Annotated (U.L.A.) 529, 530 (historical notes) (2005). The Commissioners gave the rationale behind drafting the UTSA as follows:

> Notwithstanding the commercial importance of state trade secret law to interstate business, this law has not developed satisfactorily. In the first place, its development is uneven . . . . Secondly, even in states in which there has been significant litigation, there is undue uncertainty concerning the parameters of trade secret protection, and the appropriate remedies for misappropriation of a trade secret. One commentator observed:
>
> > "Under technological and economic pressures, industry continues to rely on trade secret protection despite the doubtful and confused status of both common law and statutory remedies. Clear, uniform trade secret protection is urgently needed . . . ."
>
> Comment, "Theft of Trade Secrets: The Need for a Statutory Solution", 120 U. Pa. L. Rev. 378, 380-81 (1971).

Id. at 531.

To this end, the UTSA created a model statutory cause of action for misappropriation of trade secrets. Id. The UTSA defined "trade secret"[5] and "misappropriation"[6], id. § 1 at 537-

---

[5] The UTSA defines "trade secret" as follows:

> (4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> > (i) derives independent economic value, actual or

continue...

38, established a three-year statute of limitations, id. § 6 at 649, and provided for damages, id. § 3 at 633-34, and injunctive relief, id. § 2 at 619. The Commissioners intended that the UTSA

[5]...continue

> potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

14 U.L.A. § 1 at 538.

[6] The UTSA defines "misappropriation" as follows:

> (2) "Misappropriation" means:
>
> (i) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (ii) disclosure or use of a trade secret of another without express or implied consent by a person who
>
> (A) used improper means to acquire knowledge of the trade secret; or
>
> (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was
>
> (I) derived from or through a person who had utilized improper means to acquire it;
>
> (II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>
> (III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
> (C) before a material change of his [or her] position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

14 U.L.A. § 1 at 537 (brackets in original).

"be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it." Id. § 8 at 656 (brackets omitted).

The HUTSA became law in 1989. See 1989 Haw. Sess. Laws Act 221, § 1 at 523-25. The HUTSA incorporates nearly verbatim the UTSA's definitions of "trade secret" and "misappropriation", as well as its remedies, statute of limitations and preemption provisions. HRS §§ 482B-2 to -4, -7, -8 (2008). Though the HUTSA does not contain a uniformity provision of its own, HRS section 1-24 states that

> [a]ll provisions of uniform acts adopted by the State shall be so interpreted and construed as to effectuate their general purpose to make uniform the laws of the states and territories which enact them.

Id. § 1-24 (2009).

B. The Scope of Preemption

Courts that have considered the UTSA's preemption provision have "uniformly interpreted [it] to preempt previously existing misappropriation of trade secret actions, whether statutory or common law." Hauck Mfg. Co. v. Astec Indus., Inc., 375 F. Supp. 2d 649, 654 (E.D. Tenn. 2004); see also Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc., 649 F. Supp. 2d 702, 720 (N.D. Ohio 2009) (citing Hauck). All the parties agree that HUTSA displaces Hawai'i's existing statutory and common law causes of action for misappropriation of

a trade secret. Two questions regarding the scope of preemption remain: (1) whether the HUTSA displaces non-contract civil claims, where such claims are based on allegations of misappropriation of a trade secret; and (2) whether a non-contract civil claim is preempted when it is based on the misappropriation of confidential information that does not rise to the level of a statutorily-defined trade secret.

**1. A non-contract civil claim conflicts with the HUTSA, and is therefore displaced, to the extent that it is based upon misappropriation of a trade secret.**

a. BlueEarth's argument

BlueEarth argues that the HUTSA applies only to "the duty not to improperly acquire, use, or disclose commercially valuable secret information." Thus, "[b]ecause BlueEarth's non-contract causes of action remedy the breach of duties that are not dependent upon the existence of competitively significant secret information, none are affected by the [HUTSA]." BlueEarth bases its argument on the comment to the UTSA's "Effect on Other Law" section, which states as follows:

> This Act does not deal with criminal remedies for trade secret misappropriation and is not a comprehensive statement of civil remedies. It applies to a duty to protect competitively significant secret information that is imposed by law. It does not apply to a duty voluntarily assumed through an express or an implied-in-fact contract. The enforceability of covenants not to disclose trade secrets and covenants not to compete that are intended to protect trade secrets, for example, is governed by other law. The Act also does not apply to a duty imposed by law that is not dependent upon the existence of competitively significant

> secret information, like an agent's duty of loyalty to his or her principal.

14 U.L.A. § 7 at 651 (comment). BlueEarth claims that the comment is "dispositive" and that it "indicat[es] the clear answer to the questions before the Court."

For these reasons, BlueEarth encourages this court to apply the "elements test" to determine whether a claim is preempted by the HUTSA. That is, claims are only preempted if they have the "same elements or same underlying duty as a misappropriation of trade secrets claim." Thus, BlueEarth argues, its non-contract claims are not preempted because they "provide civil remedies for breaches of other duties and accordingly have qualitatively different elements describing a breach of those duties." BlueEarth further notes that, "this is a legal test inquiring into the nature of rights, duties, and remedies, not a factual test inquiring into the details of a plaintiff's notice pleading."

b. <u>the defendants' arguments</u>

In contrast, Aloha and the HECO defendants argue that a factual inquiry into the pleadings is necessary to determine whether the plaintiff's various non-contract claims seek remedy for misappropriation of a trade secret, regardless of how the plaintiff has labeled these claims. Aloha points to the preemption provision of the UTSA, which states:

> This Act does not affect:
>
> (1) contractual remedies, whether or not based upon misappropriation of a trade secret;
> (2) other civil remedies that are not based upon misappropriation of a trade secret; or
> (3) criminal remedies, whether or not based upon misappropriation of a trade secret.[7]

14 U.L.A. § 7 at 651 (brackets omitted). Given the conditional language that applies to "[o]ther civil remedies", as opposed to the total exclusion of contractual and criminal remedies, Aloha argues that non-contract civil remedies which <u>are</u> based upon a misappropriation of a trade secret are preempted. In turn, the phrase "based upon" suggests a factual inquiry into the allegations underlying the claim. If those allegations reveal that the underlying injury is the misappropriation of a trade secret, then the claim should be preempted.

Similarly, the HECO defendants argue for application of the "same proof" test as articulated in <u>Hauck</u>, in which the court concluded that

> perhaps a better formulation of the UTSA preemption standard would be a "same proof" standard under which a claim will be preempted when it necessarily rises or falls based on whether the defendant is found to have "misappropriated" a "trade secret" as those two terms are defined in the UTSA. Stated another way, if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it. The UTSA defines "misappropriation" broadly enough to cover a wide range of conduct, including the sort of conduct

[7] The HUTSA's preemption provision contains the same language. <u>See</u> HRS § 482B-8(b) (2008).

> contemplated by the various claims which are often involved in preemption disputes. If a proven claim, whether in whole or in part, constitutes misappropriation of a trade secret, it is that and that alone . . . The UTSA explicitly exempts from preemption only those claims "not based upon misappropriation of a trade secret," implying the UTSA's preemptive force reaches more than just claims of or for misappropriation of a trade secret. Thus, Plaintiff's non-UTSA claims against [defendant] will be preempted if, as plead, they would succeed or fail dependent on proof [defendant] acquired, disclosed, or used Plaintiff's trade secrets or otherwise confidential information . . . .

Hauck, 375 F. Supp. 2d at 658 (footnote and internal citations omitted) (emphases in original).

c. analysis

The preemption provision of the HUTSA, like that of the UTSA, states that "[t]his chapter does not affect . . . [o]ther civil remedies that are not based upon the misappropriation of a trade secret[.]" HRS § 482B-8(b)(2) (2008). We agree with the Hauck court's analysis that the phrase "based upon" implies that "the UTSA's preemptive force reaches more than just claims of or for misappropriation of a trade secret." Hauck, 375 F. Supp. 2d at 658 (emphases in original). Otherwise, a plaintiff could state multiple different claims, all stemming from the same misappropriation of trade secret injury. This would undermine the purpose of the UTSA, which was to resolve the "uncertainty concerning the parameters of trade secret protection" and create a uniform law to remedy trade secret misappropriation. See 14

U.L.A. at 531 (prefatory note); see also id. § 8 at 656; HRS § 1-24 (2009).

The "elements" test advocated by BlueEarth faces precisely the problem stated above. It would allow a party to raise multiple different claims based on the same trade secret misappropriation injury. Only a minority of courts apply the "elements" test to determine preemption. See Nucor Corp. v. Bell, 482 F. Supp. 2d 714, 725 (D.S.C. 2007) ("To determine whether a particular cause of action involves rights equivalent to those protected by the Trade Secrets Act, the elements of the causes of action should be compared, not the facts pled to prove them."); see also Powell Products, Inc. v. Marks, 948 F. Supp. 1469, 1474 (D. Colo. 1996) ("[H]ere, plaintiff alleges that defendants conspired to misappropriate its trade secrets, which requires an agreement, which is not an element of a misappropriation claim under the UTSA. This claim . . . does not conflict with the UTSA and will not be preempted.").[8]

---

[8] Some courts have employed the language of the "elements" test, but have then gone on to analyze the underlying factual basis for each claim to determine whether it is based on misappropriation of a trade secret. For example, in Mortgage Specialists, Inc. v. Davey, 904 A.2d 652, 665 (N.H. 2006), the court stated that it "agree[d] with the courts that have concluded that a claim is not preempted where the elements of the claim require some allegation or factual showing in addition to that which forms the basis for a claim of misappropriation of a trade secret." Id. However, the court went on to find plaintiff's claim for breach of fiduciary duty, which required different elements than a trade secret misappropriation claim, to be preempted. Id. at 667. See Powell, 948 F. Supp. at 1475 (holding plaintiff's conversion claim was preempted to the extent it sought recovery for misappropriation of a trade secret, but was not preempted to the extent it
continue...

The majority of courts, however, have rejected the "elements" test and have instead examined the factual allegations underlying each claim to determine whether a claim, whatever its label, is based upon misappropriation of a trade secret.[9]

---

[8]...continue
sought recovery for physical items stolen); see also LaFrance Corp. v. Werttemberger, No. C07-1932Z, 2008 WL 5068653, *4 (W.D. Wash. Nov. 24, 2008) ("Conspiracy requires an element in addition to that required to make out a UTSA cause of action. In addition, LaFrance alleges facts that are not necessary to the UTSA claim . . . Therefore, this claim cannot be dismissed at this time.") As the court in Hauck observed

> [t]he variations in language employed by courts to articulate a test for UTSA preemption can be misleading when considered in the abstract . . . In the end, all of these cases turn on their respective factual circumstances as reflected by the plaintiff's pleadings. In fact, in several instances courts have stated the law in divergent manners but proceeded to apply those seemingly contrary standards in similar, if not identical, fashion.

375 F. Supp. 2d at 657-58.

[9] See, e.g., Hauck, 375 F. Supp. 2d at 657 (surveying cases and concluding that "[i]n the end, all of these cases turn on their respective factual circumstances as reflected by the plaintiff's pleadings"); Allied Erecting, 649 F. Supp. 2d at 721 ("the appropriate scope of displacement should be defined by the 'same facts' or 'same proof' standard"); Auto Channel, Inc. v. Speedvision Network, LLC, 144 F. Supp. 2d 784, 789 (W.D. Ky. 2001) ("[the] Court must first examine each of Plaintiffs' noncontractual claims and determine whether the claim seeks a remedy for the misappropriation of trade secrets"); Thomas & Betts Corp. v. Panduit Corp., 108 F. Supp. 2d 968, 972 (N.D. Ill. 2000) ("[W]e must review the challenged counts of T&B's complaint to determine whether they are based on a misappropriation of trade secrets, or on something more."); Mortgage Specialists, 904 A.2d at 666 ("to determine whether a plaintiff's claims are preempted by the NHUTSA, a court must examine the facts alleged in support of each claim to determine the extent to which the claim is based upon the misappropriation of trade secrets or other information."); Weins v. Sporleder, 605 N.W.2d 488, 491 (S.D. 2000) ("the court is to look beyond the label to the facts being asserted in support of the claims"); Chatterbox, LLC v. Pulsar Ecoproducts, LLC, No. CV 06-512-S-LMB, 2007 WL 1388183, *4 (D. Idaho May 9, 2007) ("Plaintiff's claims for unjust enrichment and unfair competition are based on the same nucleus of facts as its trade secrets claim and, therefore, these should be dismissed as preempted by the Idaho Trade Secrets Act."); Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co., 270 F. Supp. 2d 943, 949-51 (W.D. Mich. 2003) (court
continue...

BlueEarth's arguments to the contrary are not supported by the comment to the UTSA's preemption provision. BlueEarth contends that the comment's statement that "[t]his Act . . . is not a comprehensive statement of civil remedies[,]" means that "[b]eyond displacing previously existing common law actions for trade secret misappropriation . . . the Act does not displace other civil remedies." However, it appears that the comment is merely restating the substance of the preemption provision. The UTSA is not a comprehensive statement of civil remedies because "[i]t does not apply to a duty voluntarily assumed through an express or implied-in-fact contract." 14 U.L.A § 7 at 651 (comment); see also id. § 7(b) at 651 ("This Act does not affect . . . contractual remedies, whether or not based upon misappropriation of a trade secret[.]") (brackets omitted).

The comment further states that "[t]he Act also does not apply to a duty imposed by law that is not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal." Id. § 7 at 651 (comment) (emphasis added). BlueEarth argues that the comment's reference to "duties" implies a legal, rather than a

[9]...continue
analyzed factual allegations underlying each claim to determine if claim was based upon misappropriation of a trade secret); Ethypharm S.A. France v. Bentley Pharm., Inc., 388 F. Supp. 2d 426, 434-35 (D. Del. 2005) (same); Diamond Power Int'l, Inc. v. Davidson, 540 F. Supp. 2d 1322, 1345-47 (N.D. Ga. 2007) (same).

factual, inquiry, and that the duty to refrain from misappropriating trade secrets is unrelated to and independent from, for example, the duty not to intentionally interfere with the contracts of others. Contrary to BlueEarth's argument, the language of the comment implies that the UTSA does apply to duties that are dependent upon the existence of competitively significant secret information, whatever their label. In analyzing whether a claim is preempted by the UTSA, "the court is to look beyond the label to the facts being asserted in support of the claims." Weins, 605 N.W.2d at 491; see also Mortgage Specialists, 904 A.2d at 665 ("The majority of courts that have examined this issue have not relied upon the label attached to the claim, but have examined the facts underlying the claim to determine whether it is preempted by the UTSA.").

BlueEarth states that, "[d]espite its obvious importance, no case reviewed by counsel for BlueEarth has discussed or even noted this comment" to the UTSA's preemption provision. Respectfully, it is unlikely that this "dispositive" comment has been simply overlooked by every court to have considered the scope of the UTSA's preemption. Instead, it is more likely that these courts found that the comment did not support arguments similar to those made by BlueEarth.

Though the majority of courts agree that an analysis of the plaintiff's allegations is necessary to determine whether a

claim is based upon misappropriation of a trade secret, courts have differed on how the presence of facts relating to the improper acquisition, disclosure, or use of trade secrets within non-UTSA claims affects preemption. Some courts have imposed broad preemption, going so far as to wholly preempt claims that include trade secret misappropriation allegations. See Thomas & Betts Corp. v. Panduit Corp., 108 F. Supp. 2d 968, 972-73 (N.D. Ill. 2000) (holding that claims for conversion and breach of fiduciary duty for theft of computers, disks and documents were preempted by the Illinois Trade Secrets Act because "these physical items have little value apart from the information contained therein[.]"); see also Learning Curve Toys, L.P. v. Playwood Toys, Inc., No. 94 C 6884, 1999 WL 529572, *3 (N.D. Ill. July 20, 1999) ("[I]f the operative facts are arguably cognizable under the ITSA, any common law claim that might have been available on those facts in the past now no longer exists in Illinois."). Other courts suggest that the mere presence of facts in a claim that go beyond trade secret misappropriation prevents preemption. See Micro Display Sys., Inc. v. Axtel, Inc., 699 F. Supp. 202, 205 (D. Minn. 1988) ("[T]he court will allow plaintiff to go forward and maintain its separate causes of action to the extent that the causes of action have 'more' to their factual allegations than the mere misuse or misappropriation of trade secrets . . . If the facts at trial

disclose that the whole of plaintiff's case involves the misappropriation of trade secrets, those counts will be dismissed which are merely duplicative of the MUTSA." (Emphasis added.)); see also LaFrance Corp. v. Werttemberger, No. C07-1932Z, 2008 WL 5068653, *3 (W.D. Wash. Nov. 24, 2008) ("LaFrance alleges facts that are not necessary to the UTSA claim. Therefore, this common law claim is not dismissed." (Internal citation omitted.)).

The UTSA's unitary definitions of "trade secret" and "misappropriation", its statutory remedies and statute of limitations for misappropriation of a trade secret, and its uniformity provision all evince the goal of eliminating uncertainty and creating a single action for misappropriation of a trade secret. See Burbank Grease Servs., LLC v. Sokolowski, 693 N.W.2d 89, 98 (Wis. Ct. App. 2005), rev'd in part by 717 N.W.2d 781 (Wis. 2006) (hereinafter Burbank Grease I) ("[T]he purpose of the preemption provision is to preserve a single tort action under state law for misappropriation of a trade secret as defined in the statute[.]"); see also Auto Channel, 144 F. Supp. 2d at 789 (The UTSA "arose to create a uniform business environment that created more certain standards for protection of commercially valuable information."). The HUTSA was adopted by the Hawai'i State Legislature in furtherance of these goals, as evidenced by the fact that the language of the HUTSA is virtually identical to the UTSA. See Kaho'ohanohano, 117 Hawai'i at 288,

178 P.3d at 564 (stating that "this court must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose" (brackets omitted)); see also Bateman Constr., Inc. v. Haitsuka Bros., Ltd., 77 Hawai'i 481, 485, 889 P.2d 58, 62 (1995) (finding that because the pertinent language of certain Hawai'i arbitration statutes was "virtually identical to the language of the federal arbitration statute . . . we review federal authority for guidance."); HRS § 1-24 (2009). We find that the best approach to preemption, consistent with the goals of the UTSA and HUTSA, is the "same proof" standard articulated in Hauck. Under this standard, "if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements of proof were necessary to establish it." Hauck, 375 F. Supp. 2d at 658. To the extent, however, that the claim is "based upon wrongful conduct[,] independent of the misappropriation of trade secrets[,]" it will not be preempted by the HUTSA.[10] Bliss Clearing, 270 F. Supp. 2d

[10] See, e.g., Hauck, 375 F. Supp. 2d at 659-60 (holding that plaintiff's tortious interference with contract claim survived to the extent that it did not rely on allegations that defendant misappropriated plaintiff's trade secrets); see also Smithfield Ham & Prods. Co. v. Portion Pac, Inc., 905 F. Supp. 346, 350 (E.D. Va. 1995) ("The question is not whether success on the misappropriation claim would provide the relief sought by the common law counts, but whether failure of the misappropriation claim would doom the remaining counts as well."); Mortgage Specialists, 904 A.2d at 666-67 (holding that claims for tortious interference with advantageous relations and breach of the New Hampshire Consumer Protection Act were not preempted to the extent that they were supported by more than the misuse of plaintiff's customer

continue...

at 950. In this way, the HUTSA will be the sole noncontractual civil remedy for misappropriation of a trade secret, while preserving "tort, restitutionary, and other law[s,]" HRS § 482B-8, that "seek[] to remedy an injury caused not by the misappropriation of proprietary information, but by separate conduct[.]" Diamond Power, 540 F. Supp. 2d at 1345.

### 2. A non-contract civil claim that is based upon "confidential" information which does not rise to the level of a statutorily-defined trade secret is preempted.

a. BlueEarth's argument

BlueEarth argues that

> the plain language of the preemption provision . . . refers only to "trade secrets" as defined by the Act. The preemption provision nowhere refers to "other confidential information." It follows, then, that the statute only anticipates preemption of common law claims involving trade secrets. Since there is no statutory language regarding preemption of other confidential information not rising to

[10]...continue
information); Glynn v. Edo Corp., 641 F. Supp. 2d 476, 484 (D. Md. 2009) (holding that a conversion claim "survives as to any claim for tangible items and property that is not based on improper use of information or trade secrets."); Allied Erecting, 649 F. Supp. 2d at 724 ("where a claim for breach of fiduciary duty has an independent factual basis, which is not solely dependent on misappropriation-of-trade-secret facts, courts have concluded there is no preemption."); Lucini Italia Co. v. Grappolini, 231 F. Supp. 2d 764, 771 (N.D. Ill. 2002) ("MG Capital v. Sullivan[, No. 01 C 5815, 2001 WL 1609382, at *4 (N.D. Ill. Dec. 17, 2001)] is a good example of how to resolve these issues. There, the court struck only the portion of a fraud claim relying on the misappropriation of trade secrets; any portion independent of the trade secret was retained."); Diamond Power, 540 F. Supp. 2d at 1345 ("if a claim seeks to remedy an injury caused not by the misappropriation of proprietary information, but by separate conduct - such as the misappropriation of physical property or the improper interference with contractual relationships respecting something other than proprietary information - such a claim cannot be said to be 'in conflict' with the GTSA" (emphasis in original)).

> the level of trade secrets, there is no reason to think such preemption was intended.

For this reason, BlueEarth contends that determination of whether its claims are preempted by the HUTSA is not proper on a motion to dismiss. Rather, BlueEarth argues, the court should delay the preemption inquiry until sufficient discovery has occurred, after which the court may properly determine whether the information at issue rises to the level of a statutorily-defined trade secret.

b. <u>the defendants' arguments</u>

Aloha argues that the relief provided by the HUTSA "is the sole noncontractual remedy when the underlying injury is the improper acquisition, disclosure or use of commercially valuable information; if the information does not constitute a trade secret, there is no remedy." This is so because "there is no property right in information [that] is already generally known, readily ascertainable or not the subject of reasonable efforts to maintain its secrecy." Defining the scope of the HUTSA's preemption in this manner is, according to Aloha, "[t]he only way to accord the Uniform Act its intended scope, preserve uniformity and avoid duplicative results[.]"

Similarly, the HECO defendants argue that "the 'weight of authority' holds that the UTSA's preemption provision eliminates non-contract claims founded on the alleged misuse of confidential information, regardless of whether that information is a statutory trade secret." The HECO defendants contend that

this is because the UTSA was intended to preserve a single tort action for allegations of misappropriation of information.

c. analysis

Courts holding that non-UTSA, non-contract claims based upon "confidential" or "commercially valuable"[11] information are not preempted have generally stated that their analysis is based on the "plain language" of the UTSA's preemption provision. See, e.g., Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co., 191 F. Supp. 2d 652, 656-59 (E.D. Va. 2002) (holding that the "plain reading" of the Virginia UTSA compelled a decision that claims based on information not determined to be a trade secret were not preempted); Combined Metals of Chicago Ltd. P'ship v. Airtek, Inc., 985 F. Supp. 827, 830 (N.D. Ill. 1997) ("By its plain language . . . the [Illinois ]TSA preemption provision applies only if the claim is based on the 'misappropriation of a trade secret' . . . Thus, if the Airtek die and specifications is not a trade secret or secrets, the ITSA preemption provision is inapplicable."); Nucor, 482 F. Supp. 2d

[11] "Confidential" information has been described as "data, technology, or know-how that is known by a substantial number of persons in a particular industry (such that its status as a technical 'trade secret' is in doubt) but that, nonetheless, retains some economic and/or competitive value by virtue of the fact that it is unknown to certain industry participants." Robert Unikel, Bridging the "Trade Secret" Gap: Protecting "Confidential Information" Not Rising to the Level of Trade Secrets, 29 Loy. U. Chi. L.J. 841, 844 (Summer 1998). Courts have used the term "commercially valuable" as well as "confidential" to describe this type of information. This opinion uses these terms interchangeably as well.

at 726 ("The causes of action at issue[12], unlike a cause of action under [South Carolina ]TSA, are not dependant upon a finding that the misappropriated information constitutes 'trade secrets.'").

In Burbank Grease Services, LLC v. Sokolowski, 717 N.W.2d 781, 788 (Wis. 2006) (hereinafter Burbank Grease II), for example, the Wisconsin Supreme Court noted at the outset that the allegedly misappropriated information underlying the plaintiff's claims did not qualify as a trade secret under the WUTSA's definition. The preemption provision of the WUTSA, similar to that of the HUTSA, states that it does not affect "[a]ny civil remedy not based upon misappropriation of a trade secret." Id. (quoting Wis. Stat. § 134.90(6)(b)2.). The Wisconsin Supreme Court held that the plain language of the WUTSA's preemption provision

> excepts from the class of unaffected remedies only those remedies based on the misappropriation of a statutorily-defined trade secret. It leaves available all other remaining civil remedies for the protection of confidential information.

Id. at 789. The court added that in order to hold that the WUTSA preempts claims based on confidential information which does not rise to the level of a statutorily-defined trade secret, it would

---

[12] The causes of action at issue were: breach of duty of loyalty, tortious interference with relations, unfair trade practices, conspiracy, conversion, unjust enrichment, and imposition of constructive trust. Nucor, 482 F. Supp. 2d at 726-27.

have to read the following underlined language into the statute: "This section does not affect . . . [a]ny civil remedy not based upon misappropriation of a trade secret and not based on confidential business information." Id. at 790 (emphasis in original). The court declined to so interpret the statute. Id. The court acknowledged that uniformity with other jurisdictions was one of the goals of the WUTSA; however, the court found that its plain meaning interpretation of the preemption provision was more persuasive than jurisdictions which had determined that the UTSA preempted claims based on allegations of non-trade secret confidential information. Id. at 792-94.

The purported "plain language" approach, exemplified in Burbank Grease II, has been criticized for disregarding the UTSA's uniformity directive. The dissent in Burbank Grease II described the majority's analysis as

> pay[ing] lip service to UTSA's uniformity goal and the corresponding legislative directive. It fails to engage in the necessary analysis to determine what is the uniform interpretation of the preemption provisions in UTSA or how cases decided by courts in other UTSA jurisdictions analyze the language in these provisions.

Burbank Grease II, 717 N.W.2d at 799 (Bradley, J., dissenting); see also id. (quoting Wis. Stat. § 134.90(7), which provides: "This section shall be applied and construed to make uniform the law relating to misappropriation of trade secrets among states enacting substantially identical laws."). The dissent found that, in contrast, the Wisconsin Court of Appeals analyzed the

decisions of other jurisdictions to have considered the question and determined that "the prevailing rule in most UTSA jurisdictions is that UTSA is meant to replace tort claims for unauthorized use of confidential information with a single statutory cause of action." Burbank Grease II, 717 N.W.2d at 800 (Bradley, J., dissenting) (citing Burbank Grease I, 693 N.W.2d at 101).

In Mortgage Specialists, the court noted that although the Wisconsin Supreme Court overturned the Court of Appeals' decision in Burbank Grease I, it still found Burbank Grease I

> well-reasoned, particularly for its adherence to the principles of uniformity and clarity that motivated the creation of the UTSA, in light of the legislative directive that the UTSA be construed to make uniform the law among the jurisdictions enacting it. We find the opinion of the Wisconsin Court of Appeals persuasive.

Mortgage Specialists, 904 A.2d at 664 (internal citations omitted). Commentators have also criticized the Burbank Grease II decision for failing to conduct a uniformity analysis.

> The view of the dissenting opinion in Burbank Grease Services and [similar opinions] may be regarded as the most restrictive approach to preemption. In spite of the majority's protestations to the contrary, it is also the most reasonable . . . refusing to preempt claims for the misappropriation of confidential information "effectively negate[s] the UTSA's goal of promoting uniformity" and "render[s] the statutory preemption provision effectively meaningless."

Michael Ahrens, Wisconsin Confidential: The Mystery of the Wisconsin Supreme Court's Decision in Burbank Grease Services v. Sokolowski and Its Effect Upon the Uniform Trade Secrets Act,

Litigation, and Employee Mobility, 2007 Wis. L. Rev. 1271, 1302 (2007) (footnotes omitted) (quoting Unikel, Bridging the "Trade Secret" Gap, 29 Loy. U. Chi. L.J. at 888); see also Sarah Gettings, Burbank Grease Services, LLC v. Sokolowski: Frustrating Uniformity in Trade Secret Law, 22 Berkeley Tech. L.J. 423, 438-39 (2007) ("The Burbank majority is dangerously misguided . . . Indeed, the plain language of the WUTSA's uniformity clause directs the court to conduct a uniformity analysis . . . The majority of courts interpreting the preemption provision have found that the UTSA must preempt some claims involving the protection of confidential, but not trade secret, information." (Footnotes omitted)).

The majority of the courts to have considered the issue have held that the UTSA's preemption provision

> abolish[es] all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status (e.g. idea misappropriation, information piracy, theft of commercial information, etc.).

Hauck, 375 F. Supp. 2d at 655.[13] The rationale for these

---

[13] See also, e.g., Mortgage Specialists, 904 A.2d at 664 (holding that the "NHUTSA preempts claims that are based upon the unauthorized use of information, regardless of whether that information meets the statutory definition of a trade secret."); Auto Channel, 144 F. Supp. 2d at 789 ("KUTSA replaces other law relating to the misappropriation of trade secrets, regardless of whether the Plaintiffs demonstrate that the information at issue qualifies as a trade secret."); Burbank Grease I, 693 N.W.2d at 98 ("[T]he purpose of the preemption provision is to preserve a single tort action under state law for misappropriation of a trade secret as defined in the statute and thus to eliminate other tort causes of action founded on allegations of misappropriation of information that may not meet the statutory standard for a
continue...

decisions has been explained as follows:

> States adopting statutory provisions analogous to the UTSA's section 7 intend that at least some prior law relating to the protection of commercial information be displaced. Permitting litigants in UTSA states to assert common-law claims for the misappropriation or misuse of confidential data would reduce the UTSA to just another basis for recovery and leave prior law effectively untouched. Further, by expressly exempting "contractual remedies, whether or not based upon misappropriation of a trade secret" and "other civil remedies that are not based upon misappropriation of a trade secret" from its preemptive penumbra, the UTSA makes clear that only those claims addressing or arising out of wrongs distinct from pure information piracy survive passage of the trade secret statute. Indeed, contrary interpretations of the UTSA's "Effect on Other Law" provision . . . effectively negate the UTSA's goal of promoting uniformity in "trade secrets" law. Additionally, these contrary interpretations render the statutory preemption provision effectively meaningless.

Unikel, Bridging the "Trade Secret" Gap, 29 Loy. U. Chi. L.J. at 887-88 (footnotes omitted). The UTSA creates a "two-tiered" approach to protection of commercial knowledge, under which "information is classified only as either a protected 'trade secret' or unprotected 'general skill and knowledge.'" Id. at 867-68 (footnote omitted).

---

[13]...continue
trade secret."); Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1265 (7th Cir. 1992) ("Illinois has abolished all common law theories of misuse of such [confidential] information. Unless defendants misappropriated a (statutory) trade secret, they did no legal wrong."); Thomas & Betts, 108 F. Supp. 2d at 971 (holding that the Illinois TSA "was meant 'to codify all the various common law remedies for theft of ideas.'" (quoting Learning Curve Toys, 1999 WL 529572 at *3)); Diamond Power, 540 F. Supp. 2d at 1345 ("If a plaintiff could alternatively recover for misappropriation of non-proprietary information or misappropriation of unguarded proprietary information, the legislative judgment contained in the GTSA- that such information should otherwise flow freely in the public domain- would be subverted."); Ethypharm, 388 F. Supp. 2d at 433 (same); Allied Erecting, 649 F. Supp. 2d at 720 (same); Bliss Clearing, 270 F. Supp. 2d at 948-49 (same).

Courts and commentators have recognized the argument that "[b]y adopting this approach, courts would be leaving businesses without an effective remedy for the misappropriation of information they viewed as valuable but that did not rise to the level of a trade secret." Ahrens, Wisconsin Confidential, 2007 Wis. L. Rev. at 1302; see also Mortgage Specialists, 904 A. 2d at 664 (noting that its holding that non-contract claims based on confidential information are preempted "may seem harsh"). However, the HUTSA does not preempt claims for the misappropriation of such information when it is protected by contract. See HRS § 482B-8(b)(1) (2008) ("This chapter does not affect . . . [c]ontractual remedies, whether or not based upon misappropriation of a trade secret[.]").

Further, commentators have cautioned that information which is broader than the scope of information defined as a "trade secret" by the UTSA, and not the subject of reasonable efforts to maintain its secrecy does not deserve protection in the form of non-contract tort claims. The UTSA's definition of "trade secret" is more inclusive than the previous definitions of "trade secret" at common law. See 14 U.L.A. §1 at 538 (comment) (noting that the UTSA's definition of "trade secret" is broader and more inclusive than the definition in the Restatement of Torts (First)); see also James Pooley, Trade Secrets, § 2.03[2][a] (2009) ("The Uniform Act definition [of a trade

secret] is thus considerably broader than that of Section 757 of the original Restatement of Torts . . . ."). Professor Mark Lemley, in discussing how courts should treat the overlap between trade secret law and other torts such as breach of confidence, unfair competition, unjust enrichment and interference with contract, has stated that

> [t]rade secret law should preempt these torts when they are applied to protect information that would, if secret, have been protected by trade secret law. That is, a plaintiff who complains of the defendant's use of its information, but who cannot prove that the information is secret, should not be able to rely on one of these torts (or any other common law variants) to bypass the requirement that it prove secrecy. If trade secret law does not preempt these torts, the point of the secrecy requirement will be lost, and with it the benefits of dissemination of new inventions. Companies will be unable to rely on the presence of ideas in the public domain; any information might potentially be subject to one of these torts. As a result, companies will be less willing to compete vigorously on the merits. Departing employees will be less willing to rely on information in the public domain to start new companies, and as a result more reluctant at the margins to start those companies. As Jim Pooley notes, "there is arguably little social utility" in allowing state claims based on misappropriation of trade secrets to go forward if the plaintiff cannot prove the elements of a trade secret claim.

Mark A. Lemley, The Surprising Virtues of Treating Trade Secrets as IP Rights, 61 Stanford L. Rev. 311, 345-46 (Nov. 2008) (footnotes omitted) (quoting Pooley, Trade Secrets, § 3.04[4], 3-43 to -44).

Similar to the court in Burbank Grease II, BlueEarth argues that

> the plain language of the preemption provision . . . refers only to "trade secrets" as defined by the Act . . . Since

> there is no statutory language regarding preemption of other confidential information not rising to the level of trade secrets, there is no reason to think such preemption was intended.

However, the HUTSA's preemption provision should not be considered "in a vacuum." Burbank Grease II, 717 N.W.2d at 798 (Bradley, J., dissenting). Rather, "this court must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." Kaho'ohanohano, 117 Hawai'i at 288, 178 P.3d at 564 (brackets omitted). Here, the Hawai'i State Legislature has directed that "[a]ll provisions of uniform acts adopted by the State shall be so interpreted and construed as to effectuate their general purpose and to make uniform the laws of the states and territories which enact them." HRS § 1-24 (2009). As the foregoing analysis shows, courts in other jurisdictions have not been absolutely uniform in deciding whether non-contract claims based on information which does not rise to the level of a statutorily-defined trade secret are preempted under the UTSA. However, the conclusion that such claims are preempted, reached by the majority of courts to have considered the issue, comports with the HUTSA's goal of uniformity in the area of trade secret misappropriation.

The UTSA Commissioners made clear that the "general purpose" of the UTSA was uniformity of trade secret law. 14 U.L.A § 8 at 656.

> A common law claim premised on information that fails to qualify as a trade secret would seemingly undercut the statute's primary goal of uniformity, potentially render parties liable for using information that is not secret when the UTSA would not impose liability, and potentially pose Supremacy Clause problems. Likewise, it is not clear if such alternative claims would permit different results on matters such as the statute of limitations, punitive damages, attorneys' fees, and the like.

Pooley, Trade Secrets, § 2.03[6] (footnote omitted). The court in Mortgage Specialists noted that, along with the contribution of unitary definitions of "trade secret" and "misappropriation"

> [t]he UTSA "also arose to create a uniform business environment that created more certain standards for protection of commercially valuable information." [Auto Channel, 144 F. Supp. 2d at 789.] "[T]he purpose of the preemption provision is to preserve a single tort action under state law for misappropriation of a trade secret as defined in the statute and thus to eliminate other tort causes of action founded on allegations of misappropriation of information that may not meet the statutory standard for a trade secret." [Burbank I, 693 N.W.2d at 98.] As such, the UTSA "was meant to codify all the various common law remedies for theft of ideas." [Thomas & Betts, 108 F. Supp. 2d at 971 (quotation omitted)]; see also [Bliss Clearing, 270 F. Supp. 2d at 948]. With the enactment of the UTSA, confidential information not rising to the level of a statutory trade secret was left largely unprotected by the law. See [N.H. Rev. Stat. §] 350-B:7, I. . . . "If a common law claim for unauthorized use of information that did not meet the statutory definition of a trade secret were permitted, the result 'would undermine the uniformity and clarity that motivated the creation and passage of the [UTSA].'" Burbank Grease I, 693 N.W.2d at 99 (quoting Auto Channel, 144 F. Supp. 2d at 789).

Mortgage Specialists, 904 A.2d at 663. The Mortgage Specialists court's analysis is persuasive and consistent with the Hawai'i State Legislature's goals in adopting the HUTSA. See HRS § 1-24 (2009); see also Kaho'ohanohano, 117 Hawai'i at 288, 178 P.3d at

564. Accordingly, we hold that the HUTSA preempts non-contract, civil claims based on the improper acquisition, disclosure or use of confidential and/or commercially valuable information that does not rise to the level of a statutorily-defined trade secret.

### 3. Preemption analysis is appropriate at the motion to dismiss stage

In BlueEarth's view, preemption is proper only when allegations are based upon "trade secrets" as that phrase is defined in the UTSA. Thus, BlueEarth argues that it is premature to consider preemption at the motion to dismiss stage because the court does not yet have sufficient information to determine whether the allegations in the complaint rise to the level of statutorily-defined trade secrets. However, as analyzed above, we hold that the HUTSA preempts claims when the alleged injury is based on the improper acquisition, disclosure, or use of confidential and/or commercially valuable information, whether or not that information rises to the level of a statutorily-defined trade secret. As the court in Hauck stated:

> Plaintiff argues, at least in part, certain of its non-UTSA claims against [defendant] are not preempted because they do not depend on the information at issue qualifying as a "trade secret." While some courts have employed language seemingly indicating as much, a plaintiff surely cannot use general tort causes of action to revive claims which would otherwise not be cognizable in light of the UTSA (i.e., claims alleging theft of non-trade secret information). It is a legal non sequitor to suggest general tort causes may be employed to protect legal rights which otherwise do not exist . . . such an approach would be wholly inconsistent with the UTSA's goals of promoting uniformity and predictability . . . A claim cannot be preempted or not

> preempted based entirely upon whether or not the information at issue qualifies as a trade secret. If the information is a trade secret, the plaintiff's claim is preempted; if not, the plaintiff has no legal interest upon which to base his or her claim. Either way, the claim is not cognizable.

Hauck, 375 F. Supp. 2d at 656-57 (internal citations omitted).[14] Accordingly, we hold that a court need not wait to determine if the allegedly misappropriated confidential and/or commercially valuable information constitutes a "trade secret", as that term is defined in the HUTSA, before considering preemption.

## IV. CONCLUSION

Based on the analysis above, we answer the certified questions as follows.

1. **When are "tort, restitutionary, and other law[s] of this state" displaced because they "conflict" with HUTSA, [HRS] § 482B-8?**

"Tort, restitutionary, and other law[s] of this state" conflict with the HUTSA, are therefore displaced, to the extent that they are based upon misappropriation of a trade secret. That is, "if proof of a [non-HUTSA] claim would also

---

[14] See also Ethypharm, 388 F. Supp. 2d at 433 ("Because all claims stemming from the same acts as the alleged misappropriation are intended to be displaced, a claim can be displaced even if the information at issue is not a trade secret. Thus, a determination of whether the information at issue constitutes a trade secret under the DUTSA need not be addressed prior to making a determination of displacement."); Bliss Clearing, 270 F. Supp. 2d at 948-49 ("[T]he Court concludes that the disputed status of information as a trade secret does not preclude a court from determining whether a claim or claims are displaced by the MUTSA."); Allied Erecting, 649 F. Supp. 2d at 722 ("[T]he Court joins the majority view in finding that displacement of common-law claims may precede the Court's determination of whether the information at issue constitutes a trade secret."); Mortgage Specialists, 904 A.2d at 666-668 (finding that a preemption analysis was proper at the motion to dismiss stage).

simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it." Hauck, 375 F. Supp. 2d at 658.

**2. When a claim is found to "conflict" with HUTSA, what is the scope of preemption, or displacement, of that claim under HRS § 482B-8?**

For those claims found to conflict with the HUTSA, the scope of displacement is complete. However, a claim may survive to the extent it alleges wrongful conduct independent of the misappropriation of trade secrets.

**3. May a claim that is found not to "conflict" with HUTSA still be preempted, or displaced, under HRS § 482B-8?**

Only claims that are found to conflict with the HUTSA are preempted.

**4. Does HUTSA also preempt, or displace, claims based upon the alleged misuse of "confidential information," which is determined, before or during trial, not to meet the definition of "trade secret" under HRS § 482B-8?**

The HUTSA displaces non-contract civil claims based upon the alleged acquisition, disclosure, or use of confidential information that does not rise to the level of a statutorily-defined trade secret. Accordingly, it is unnecessary to determine whether or not the information at issue meets the

definition of a trade secret before addressing displacement under the HUTSA.

On the briefs:

Paul Alston and
Clyde J. Wadsworth
(of Alston Hunt Floyd & Ing)
for Defendants-Appellants
Hawaiian Electric Company,
Inc.; Maui Electric Company,
Ltd.; and Karl E. Stahlkopf

C. Michael Heihre,
Calvert G. Chipchase,
and Teri-Ann E.S. Nagata
(of Cades Schutte) for
Defendant-Appellant
Aloha Petroleum, Ltd.

John S. Edmunds,
Ronald J. Verga,
and Joy S. Omonaka (of
Edmunds Verga & Omonaka),
Michael K. Hurst, Tonya
Parker, and Jaime Olin
(of Gruber Hurst Johansen &
Hail, LLP) for Plaintiff-
Appellee BlueEarth
Biofuels, LLC

Paula A. Nakayama

James E. Duffy, Jr.

Mark E. Recktenwald